Lance C. Venable (#017074)
lancev@vclmlaw.com
Wendy K. Akbar (#025340)
wakbar@vclmlaw.com
**VENABLE, CAMPILLO, LOGAN & MEANEY, P.C.**
1938 East Osborn Road
Phoenix, Arizona 85016
Tel: 602-631-9100

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **INTER123 CORPORATION,** a Nevada Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**CHADI GHAITH,** an individual and foreign resident of LEBANON,<br><br>Defendant | Case No.: 2:14-cv-00463-DGC<br><br>**PLAINTIFF INTER123 CORPORATION'S RENEWED AND AMENDED MOTION FOR ALTERNATIVE SERVICE AND ISSUANCE OF LETTERS ROGATORY REQUESTING INTERNATIONAL JUDICIAL ASSISTANCE**<br><br>**Assigned to the Honorable David G. Campbell** |

The Plaintiff, Inter123 Corporation ("Inter123"), through its attorneys, Venable, Campillo, Logan & Meaney, P.C., ask that this Court for: (1) leave to effectuate service of the Summons and Complaint by alternative means upon Defendant Chadi Ghaith; and in the alternative for (2) issuance of a Letters Rogatory/Letter of Request as to Ghaith, a resident of Lebanon.  Inter123 previously filed this motion as Docket #25, but this Court dismissed it as moot in view of its decision finding that the Court lacked personal jurisdiction over Ghaith based on Inter123's breach of contract claim in its original complaint.  Inter123 has now filed an amended complaint (Dkt #32) alleging additional claims that now provide the Court with personal jurisdiction over Ghaith based on his contacts with this forum.

As to the means of alternative service, Inter123 requests that this Court authorize

1

the Clerk of Court to send the pleadings to Defendant or his attorney, David Lin, via Federal Express, or else authorize counsel for Inter123 to do so by e-mail, which counsel has already done via Court Order (Dkt #11) which would render service complete.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **PRELIMINARY STATEMENT**

At the heart of this case lies a defendant who willfully flouts this Court's authority every chance he gets, and who now seeks to continue doing so by complaining about lack of service of process despite his intimate and continued knowledge and notice of this case.

Immediately after hearing that he was being sued in the District of Arizona and that the Court was being asked to require GoDaddy.com LLC to place a hold on the MOBILE.CO domain name at issue, Ghaith transferred that domain name to Instra Corporation, a registrar in Melbourne, Australia.  He then failed to show up at the TRO hearing.  When the TRO issued requiring him to transfer the domain name back to GoDaddy, Ghaith ignored that order and continues to do so.  Instead, one week later while the TRO was still in force, he approached Inter123's CEO, Jeffrey Peterson, bragged about his 1,800 domain names – of which MOBILE.CO was "more or less [ ] insignificant" -- and threatened to hire "a whole team of lawyers" to sue anyone who took it out of his possession.  Then, having learned via the pleadings the extensive value MOBILE.CO provides to Inter123, he offered to re-sell the MOBILE.CO name -- which he already sold to Inter123 for $59,000, and which the Court has ordered him to transfer to GoDaddy.com LLC, and which is now on hold at Instra out of his control – for two-and-a-half times the price. In point of fact, since that point, and despite the TRO against him and the pending suit, Ghaith has since sold or leased the same website space and domain name -- which he no longer legally owns or can even control on Instra -- to yet another company.  By contrast, within the last two weeks Inter123 has continued to further its business prospects, purchasing the MOVIL.CO domain name ("Movil" means "Mobile" in Spanish), the MOBILE.COM.CO domain name, developing a website and

2

logo to appear on each page, and filing U.S. trademark applications for MOVIL.CO and MOBILE.CO as it prepares to continue expanding the brand and investment that began with MOBILE.PRO and MOVIL.PRO.

Defendant now seeks to weasel his way out this Court's orders and this lawsuit by evading service.  Ghaith, however, has been in constant contact with Inter123 and its counsel both before and during this lawsuit, and has received copies of all operative documents.  He has hired counsel, who appeared telephonically at the March 27, 2014 hearing, filed a motion, and appeared again at the preliminary injunction hearing on April 3, 2014. Counsel, however, has refused to accept service on his client's behalf.  Instead, he argued that lack of service means the preliminary injunction must be denied and the Complaint dismissed.

Inter123 is and has attempted various methods of service, and seeks to continue doing so via this motion.  But as almost all the options for service upon a foreign individual in Lebanon can take up to a year to effectuate, and given the timeliness issues here, Inter123 requests alternative means of service given the extenuating circumstances; alternatively, Inter123 requests the Court issue a Letters Rogatory/Letter of Request to the Lebanese judicial authorities to effectuate service.  Simply put, Ghaith cannot be permitted to shirk this Court's orders and jurisdiction, or his contractual obligations, over a procedural hurdle meant to ensure a minimal level of notice he far surpasses.

## II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.     Events Leading Up to the Present Suit.

In February and March 2014, Inter123 sought to obtain the second-level internet domain name MOBILE.CO, which was being offered for sale by Defendant Ghaith.[1] Beginning February 22, 2014, the parties engaged in a six-day negotiation over the sale price of the domain name.[2]  The negotiation was completed and resulting agreement executed with Inter123's President and CEO, Jeffrey Peterson, who was located in

---

[1] The .CO top-level domain is assigned to the country of Columbia, but can be used and accessed from anywhere in the world.  As a result, "CO" has been used to signify the word "company" as well as the country Colombia.

[2] (Amended Compl. ¶¶30-33 & Exhibit F; Declaration of Jeffrey Peterson ("Peterson Decl.") (Dkt #7) at ¶10).

3

Arizona where Inter123 has its principal place of business.[3] The parties agreed that Inter123 would pay Ghaith $59,000 in exchange for transferring the MOBILE.CO domain name to Inter123.[4] To facilitate the transfer, the parties used a U.S.-based third-party escrow service, Sedo LLC, on which Ghaith displayed his MOBILE.CO domain name for sale; a written agreement ("the Agreement") was executed to facilitate the transfer of the domain name.[5] Paragraph 4(c) required Inter123 to provide Sedo with the $59,000 payment within 6 days.[6] Once notified of payment, Paragraph 4(d) required Ghaith to immediately provide Sedo with authorization information that it could use to contact GoDaddy.com, LLC in Scottsdale, Arizona and transfer ownership of the MOBILE.CO domain name to Inter123.[7] On March 3, Inter123 wired SEDO the required $59,000; but Ghaith has since refused to transfer the domain name, and even sought to cancel the contract.[8]

On March 7, 2014, Inter123 brought the instant suit, requesting a TRO and PI. In doing so, Inter123 pointed out that "If Ghaith is allowed to transfer the MOBILE.CO domain name to a third-party hosting site outside of the United States, it would make it all but impossible for Inter123 to obtain the rights to the MOBILE.CO domain name and Inter123 would be irreparably harmed."[9] When Inter123 notified Ghaith under this Court's Order (Dkt #11) of the instant Complaint and request for TRO and PI at midnight Lebanon time on March 12, 2014, Ghaith did exactly that: By 8:00am his time, Ghaith had transferred the domain name from GoDaddy.com LL to the domain name registrar Instra Corporation in Melbourne, Australia.[10] Ghaith then failed to make any appearance at the TRO hearing on March 14, 2014.

---

[3] (Id.)
[4] (Amended Compl. ¶¶26-33).
[5] (Amended Compl. ¶¶26-33 & Exhibit H).
[6] (*Id.*)
[7] (*Id.*)
[8] (Amended Compl. ¶¶43-48).
[9] (Pltf. TRO (Dkt #4) Motion at 5)
[10] The timing can be seen on the Instra Corporation website record for the MOBILE.CO name. (Renewed Declaration of Lance Venable ("Venable Decl"). ¶3 & Ex. B). The time of transfer is noted as 5:57am GMT. Lebanon is two hours ahead of GMT time, three hours during Daylight Savings.

### B. Ghaith's Subsequent Egregious Conduct.

The Court granted the TRO on March 14, 2014.[11] Upon being informed that a TRO required him to transfer the domain name from Instra back to GoDaddy.com where it resided at the inset of this action, Ghaith did not comply with the Order. Despite the TRO being extended for two weeks, Ghaith has still not complied; instead, *Inter123* persuaded Instra to place a hold on the domain name in the interim.[12]

What Ghaith did do a week after the TRO issued was to contact Inter123's CEO, Jeffrey Peterson, by Facebook, and stated, among other things, that "I own a portfolio of more than 1800 of top level domain names (which mobile.co is least important amongst", that "my annual income exceeds 600k (so buying or selling 1 domian [sic] more or less is insignificant to me)", and that "every time your lawyer sends me another one of his legal harassment emails you loose a % of a chance to own mobile.co." He also asserted that "[I] am loosing [sic] interest in ever selling mobile.co to you by the minute . . . I am so close to sleeping on this domain another decade or so."[13]

Likewise, having learned via Inter123's motion papers that (1) Inter123 considered MOBILE.CO very valuable; (2) Inter123 already had a domain name and company named Mobile.Pro, which made MOBILE.CO a natural extension; (3) Jeffrey Peterson and Inter123 have extensive Hispanic and Latino connections and business such that a Colombia domain name was especially attuned to their business, Ghaith offered to re-negotiate and re-sell the MOBILE.CO name -- which he already sold to Inter123 for $59,000, and which the Court has ordered him to transfer to GoDaddy.com LLC, and which is now on hold at Instra and out of his control – for 2.5 times the price: "not below a 150K reserve."[14] He informed Mr. Peterson that "in any case scenario the legal system is flexible enough to allow me to sue back any buyer who usurps a property of mine

---

[11] (Dkt #15).
[12] There is no guarantee that Instra will continue to maintain that hold.
[13] (Renewed Third Supplemental Declaration of Jeffrey Peterson. ("Third Peterson Supp. Decl) ¶¶4-5 & Ex. A-B)
[14] In point of fact, this price is grossly overinflated. The typical .CO name sells for under $3,000; the highest-value ones, such as business.co or dating.co, go for between $30,000-$80,000. *See* http://tech.co/average-price-of-co-domain-2013-07 (Venable Decl. ¶13 & Ex. J)

5

without my full consent . . . I have the enough power and resources to hire not just one lawyer to represent me anywhere in the world but a whole team of lawyers."[15]

Less than two hours before the preliminary injunction hearing, Ghaith's newly-minted counsel filed a motion to dissolve the TRO, vacate the hearing, and dismiss the Complaint.[16] Counsel then appeared by phone and actively participated; he has now filed briefing on April 1, 2014 and appeared at an April 3, 2014 hearing telephonically. But counsel has refused to accept service of process on his client's behalf.[17]

Given Ghaith's prior conduct and Facebook postings, Inter123 counsel expressed trepidation during the March 27, 2014 hearing that should a TRO be lifted and no preliminary injunction issue, Ghaith would pressure Instra with his "whole team of lawyers" to lift the hold and again transfer the domain name or sell it to a third party willing to pay his overinflated price. There is evidence that Ghaith has now done exactly that. Up until the past few days, http://www.mobile.co was pointed at a Sedo domain resale landing page   As of March 29, 2014, the site www.mobile.co has been redirected to a new company, which has apparently started using the domain, including a "MOBILE.CO" logo. This company is Mobiles4everyone Ltd[18] Accordingly, it appears that Ghaith, since selling the website to Inter123, and while trying to re-negotiate that sale for an overinflated price, has since sold or leased the same website space and/or domain name, to another. This subsequent conduct has also let Inter123 to amend its Complaint to allege claims for trademark infringement and unfair competition, as well as conversion.

Within the last week, Inter123 has continued to develop its valuable Mobile.Pro brand and business. In addition to already owning the website Movil.Pro ("Movil" means "Mobile" in Spanish), Inter123 on March 28, 2014 completed its acquisition of the domain name MOVIL.CO, and as of March 31, 2014 has developed and launched a website at that domain name.[19] Inter123 has also just acquired the MOBILE.COM.CO

---

[15] (Third Peterson Supp. Decl. ¶¶4-5 & Ex. A-B).
[16] (Dkt #20).
[17] (Venable Decl. ¶4 & Ex. C).
[18] (*see* http://mobile.co/about.asp).
[19] (Third Peterson Supp. Decl. ¶¶6-7 & Ex. C).

6

domain name and as of April 7, 2014 has developed and launched a website at that domain name.[20] Additionally, Inter123 has filed U.S. Trademark Office applications for both MOBILE.CO and MOVIL.CO, joining its already-existing applications for MOBILE.PRO and MOVIL.PRO.[21]

Inter123 has obtained certified copies of the Complaint and is prepared to send the operative documents to the U.S. Embassy in Lebanon for service.[22]  Inter123 likewise brings the present motion for a Letter of Request/Letters Rogatory.  But as all these options can take up to a year to effectuate service,[23] Inter123 requests alternative means of service given the extenuating circumstances here.

### III.     LEGAL STANDARD

Pursuant to Fed.R.Civ.P. 4(f), an individual in a foreign country may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:  (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction; (B) as the foreign authority directs in response to a letter rogatory or letter of request; or (C) unless prohibited by the foreign country's law, by: (i) delivering a copy of the summons and of the complaint to the individual personally; or (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.[24]

It is well established that "there is no hierarchy among the subsections in Rule 4(f)."[25]  Rule 4(f)(3), which permits courts to allow service on a defendant in a foreign country by any "means not prohibited by international agreement," is "neither a last resort nor extraordinary relief. It is merely one means among several which enables service of

---

[20] (Third Peterson Supp. Decl.  ¶¶6-7 & Ex. C).
[21] (Third Peterson Supp. Decl.  ¶8 & Ex. D).
[22] (Venable Decl. ¶8).
[23] (Venable Decl. ¶9 & Ex. F).
[24] Fed.R.Civ.P. 4(f)(1)-(3).
[25] *Advanced Aerofoil Techs., AG v. Todaro*, No. 11-cv-9505, 2012 WL 299959, at *1 (S.D.N.Y. Jan. 31, 2012).

7

process on an international defendant."[26]  The decision of whether to order service of process under Rule 4(f)(3) is "committed to the sound discretion of the district court."[27]  To obtain the Court's permission to utilize Rule 4(f)(3), plaintiffs must show that "the facts and circumstances of the present case necessitate . . . district court intervention."[28]

## IV. ARGUMENT

### A. The Court Should Permit Service By E-mail Or Authorize the Clerk or Inter123 to Send the Pleadings to Defendant or his Counsel, Under Fed.R.Civ.P. 4(f)(2)(C)(ii) or 4(f)(3)

Given Defendant's egregious conduct, combined with his clear notice of and appearance in this matter, Inter123 requests that this Court permit service of process by: (a) authorizing the Clerk of Court to send the pleadings to Defendant or his attorney who has appeared[29] in this matter, David Lin, via Federal Express; or (b) authorize counsel for Inter123 to do the same by electronic mail.

Under Fed.R.Civ.P. 4(f)(3), an individual in a foreign country may be served by other means not prohibited by international agreement, as the court orders.[30]  Rule 4(f)(2)(C)(ii) also permits service via the Clerk of Court.  The Ninth Circuit has held that alternative service under Rule 4(f)(3) does *not* require attempted service by other methods, including through diplomatic channels or letters rogatory, before resort to court-ordered service under this rule.[31]  This Court has recently granted alternative service in

---

[26] *Id.* (*citing Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) (quotation marks and citation omitted)).
[27] *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) (quotation marks and citations omitted).
[28] *Rio Props.,* 284 F.3d at 1016 (citation omitted).
[29] While counsel for Ghaith attempted to make his appearance a "special" one (Dkt #20, at 1), "under the Federal Rules of Civil Procedure, 'the distinction between a special and general appearance has been abolished.'"  *U.S.* v. *Lebanese Canadian Bank,* 2012 WL 20035997 *6.  Counsel has appeared in his action to contest not only personal jurisdiction, but subject matter jurisdiction, jurisdiction over the Australian entity holding the domain name at issue, the merits of the preliminary injunction motion (including substantive issues such as likelihood of success), and the issue of whether service of process is required for a preliminary injunction to be granted.
[30] *Id.*
[31] *Rio Props,* 284 F.3d at 1015-16 ("Instead, we hold that Rule 4(f)(3) is an equal means of effecting service of process . . . and we commit to the sound discretion of the district court the task of determining when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)"); *see also Brockmeyer v. May*, 383 F.3d 798 (9th Cir. 2004) (citing numerous cases involving court-ordered service of a foreign defendant by e-mail, mail, fax and similar alternative methods); *Acushnet Co. v. Thiede*, No. CV 12-02508-PHX-JAT, 2013 WL 5428758 *1 (D. Ariz. Sep. 27, 2013)

just this type of situation.[32]  Additionally, as the court acknowledged in Defendant's favorite case, *3M Co. v. Christian Investments LLC*, even if a preliminary injunction cannot be entered absent service, Inter123 "can request to serve process on the foreign defendants by alternative means," thereby fixing this dilemma.[33]

### 1.  Alternative Service Comports with Due Process

Absent any contrary international agreement, the issue is whether service by delivery in this manner would comport with constitutional due process.  The answer is a resounding "YES."

Service comports with due process if it is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.[34]  Ghaith is well aware of this case, has been corresponding with counsel for Inter123 since before its inception, and has retained counsel who appeared in this case before the originally-scheduled preliminary injunction hearing, at which time he zealously represented his client but has refused to accept service of process on his client's behalf.

What's more, Ghaith has willfully sought to flout this Court's efforts at every turn.  After being informed of the pending lawsuit at midnight his time – a motion that provided a roadmap to insubordination by stating that " Ghaith could simply move the domain name out of the country and render it extraordinarily difficult for Inter123 to obtain possession of it" -- Ghaith transferred the domain name from GoDaddy.com in Scottsdale (this Court's backyard) to Australia . . . as soon as he woke up in the morning.  He then did not bother to show up at the TRO hearing.  Nor has he complied with the Court's TRO order to transfer the domain name back to GoDaddy where it resided at the

---

(quoting *Rio Props* in holding that "service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country.").
[32] *OEM Grp. v. Semsysco Inc. et al.*, No. CV-13-01960-PHX-DGC, 2014 WL 1245084 *1 (D. Ariz. Mar. 24, 2014) ("Service of process under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but "is merely one means among several which enables service of process on an international defendant.") (*quoting Rio Props*).
[33] Case 1:11-CV-00627-TSE-JFA at *11 (E.D.Va. Aug. 19, 2011), *citing* Fed.R.Civ.P. 4(f)(3); *Rio Props.*, 284 F.3d at 1016.
[34] *Liberty Media Holdings, LLC v. Vinigay.com*, No. CV-11-0280-PHX-LOA, 2011 WL 7430062 *1 (D. Ariz. Mar. 3, 2011) (permitting service by e-mail under due process) (*quoting Rio Props.,* 284 F.3d at 1016, 1017); *see also OEM Grp.*, 2014 WL 1245084 *1.

9

beginning of this lawsuit.  Instead, Ghaith contacted Mr. Peterson and informed him that while MOBILE.CO was "more or less [ ] insignificant to me," and that he was willing to sell the domain name already contracted for at $59,000 . . . for a low "reserve" of $150,000!  Despite the insignificance of the domain name to him, he declared that he would utilize his "power and resources" to hire "a whole team of lawyers" to "sue back any buyer who usurps a property of mine without my full consent."  Now, within the past few days, Ghaith has sold or leased the www.mobile.co website to yet another company that now prominently displays a "Mobile.Co" logo on top.

In sum, Ghaith has full notice, is represented, and is actively participating.  His actions in contravention to this Court's orders are egregious at best, and he has evinced a clear intent to continue refusing to transfer the domain to Inter123, even to the point of harassing Instra to release the hold, and engage in yet another sale or lease of a domain name that does not own anymore.  To engage in methods of service that will likely take months if not over a year, which at this point is academic given Ghaith's knowledge of and participation in this case and correspondence, will sorely harm Inter123.  Inter123 must take hold of the MOBILE.CO domain name and begin developing it as soon as possible, given the growing value of the .CO domain combined with the .CO company's recent acquisition by Neustar, a major company[35] and Inter123's recent acquisition of MOVIL.CO and trademark applications for MOVIL.CO and MOBILE.CO.  The harm posed by waiting *up to a year* for service by Letters Rogatory/Letter of Request, or by the U.S. Embassy in Lebanon, is compounded if the Court rules that a preliminary injunction hinges upon service of process.  If so, Ghaith might be able to transfer the domain name yet again to Mobiles4everyone Ltd (which it appears he has recently leased or attempted to sell the domain name to) or another company while service is pending and no TRO is in place.  If so, Inter123 will be wholly dependent upon the goodwill of Instra in maintaining its hold on the MOBILE.CO domain – something that could easily change if Ghaith were to exercise pressure or institute a lawsuit against Instra in Australia – something he has already threatened to do.

---

[35] (Venable Decl. ¶10 & Ex. G).

10

### 2. Alternative Service is Necessary Under the Circumstances.

Some courts look to whether alternative service is "necessitate[d]";[36] in such instances district courts generally require: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.[37]  Courts in the District of Arizona, however, have summarily ordered alternative service under *Rio Props* without conducting this test.[38]

In any case, Inter123 has taken, and is prepared to take, reasonable steps to effectuate service.  <u>First</u>, Inter123 has kept Ghaith informed of the current proceedings from the start, forwarding him the operative documents in response to the Court's Order and engaging in dialogue, both through counsel and through Mr. Peterson.  Ghaith is well aware of the current action.  <u>Second,</u> Inter123 requested that Ghaith's counsel accept or waive service on his client's behalf, both in court and by e-mail.  Counsel refused.  <u>Third,</u> Inter123 has obtained certified copies of the Complaint and other operative documents and is prepared to send them the U.S. Embassy in Lebanon to effectuate service if needed, a process that can take months.  <u>Fourth,</u> contemporaneously with asking for alternate service Inter123 requests Letter of Request/Letters Rogatory from this Court, also a process that can take over a year.

Given Ghaith's extraordinary conduct and clear intent to sell, lease, harass Instra and otherwise keep the MOBILE.CO name (one he has already paradoxically noted is "least important" among his 1,800 domain name collection) away from this jurisdiction and Inter123, Inter123 does not have a year – or even a day.  Rather, "the Court's intervention is, clearly, necessary. Lebanon is not a party to the Hague Convention, and thus alternative methods of service otherwise available under Rule 4(f)(1) are

---

[36] *Rio Int'l Interlink*, 284 F.3d at 1016;
[37] *Devi v. Rajapaska*, No. 11-cv-6634, 2012 WL 309605, at *1 (S.D.N.Y. Jan. 31, 2012).
[38] *See, e.g., OEM Grp.*, 2014 WL 1245084; *Acushnet,* 2013 WL 5428758; *Liberty Media,* 2011 WL 7430062; *Xcentric Ventures, LLC v. Karsen, Ltd.*, No. No. CV 11-1055-PHX-FJM, 2011 WL 3156966 (D. Ariz., Jul. 26, 2011) (service by e-mail permitted).

11

1 unavailable here.[39]  Additionally, [Inter123] already requested that the defendants' U.S.

2 counsel accept or waive service on their behalf, but counsel declined to do so."[40]

3       Necessity in particular exists where defendants "are subject to asset restraints"

4 under a TRO, especially where motion practice is under way regarding these issues.[41]

5 Service, and expedition of this consequential litigation, is clearly in the public interest

6 and the interest of all parties, viewed collectively.[42]  This is certainly the case here;

7 moreover, if the Court finds that a preliminary injunction cannot issue without service,

8 Instra may very well remove the hold if or when Ghaith exerts pressure on it via threats

9 of litigation, again taking a page from Inter123's playbook of concerns.  Ghaith has

10 already demonstrated intent to sell the domain name for a higher price, sit on it for a

11 decade, or fight to retain it by whatever means necessary, even threats of litigation.

12 There is even evidence that Ghaith has already promised another company title, and is

13 permitting that company to use it (and prominently display a "MOBILE.CO" logo) in the

14 meantime.  Obtaining the MOBILE.CO name is crucial to Inter123's ongoing business

15 interests.  Accordingly, "because alternative service on foreign entities is authorized by

16 Rule 4(f), because alternative service is not prohibited by any international agreement,

17 and because the circumstances convincingly demonstrate that intervention by the Court

18 is necessary and in the public interest, the Court [should grant the] motion and authorize

19 [ ] both mechanisms of alternative service." [43]

     **B. <u>Alternatively, Inter123 Requests That the Court Issue a Letters Rogatory/Letter of Request Under Fed.R.Civ.P. 4(f)(2)(B).</u>**

Alternatively to service as outlined above, Inter123 requests that the Court issue a Letter of Request/Letters Rogatory to execute service.

Lebanon is not a signatory to the Hague Convention on the Service Abroad of

---

[39] *See, e.g., Ehrenfeld v. Salim a Bin Mahfouz*, No. 04-cv-9641, 2005 WL 696769, at *2 (S.D.N.Y. Mar. 23, 2005) (granting alternative service under Rule 4(f)(3) where defendant resided in Saudi Arabia, a non-party to the Hague Convention).
[40] *U.S. v. Lebanese Canadian Bank SAL et al.,* No. 11-Civ-9186 (PAE), 2012 WL 2035997 (S.D.N.Y. Jun. 6, 2012).
[41] *Id.*
[42] *Id.*
[43] *Id.* (holding as such as to Lebanese defendants).

Judicial and Extrajudicial Documents, such that Rule 4(f)(1) does not apply.  But while not ratifying the document, Lebanon has acceded to the 1954 Convention on Civil Procedure, as noted by the Hague Conference on Private International Law, the World Organisation for Cross-border Co-operation in Civil and Commercial Matters, acknowledges that.[44]  The 1954 Convention on Civil Procedure provides for a Letter of Request/Letters Rogatory as follows:

> "**a judicial authority of a Contracting State may**, in accordance with the provisions of the law of that State, **apply, by means of a Letter of Request, to the competent authority of another Contracting State to request it**, within its jurisdiction, to . . . **perform some other judicial act** . . .
>
> . . . Letters of Request shall be **transmitted by the consul of the requesting State to the authority which shall be designated by the State of execution**.  That authority shall send to the consul the document establishing the execution of the Letter of Request or indicating the fact which prevented its execution . . .
>
> . . . . The judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed . . .
>
> . . . The execution of such Letters of Request shall not give rise to reimbursement of taxes or costs of any nature.[45]

As noted in the 1954 Convention on Civil Procedure, the Lebanese tribunal will apply its own law as to the methods and procedures to be followed, such that effectuation of service will occur under applicable Lebanese law.[46]  Courts have therefore noted that alternative service can be proper in Lebanon.[47]  But issuance of a Letters Rogatory/Letter of Request can take over a year to execute – precious time Inter123 does not have in light of Ghaith's actions combined with its need to develop and mobilize the MOBILE.CO domain immediately.

V.   **CONCLUSION**

For the foregoing reasons, Inter123 respectfully requests that the Court authorize

---

[44] *See* http://www.hcch.net/index_en.php?act=states.details&sid=105 (Venable Decl. ¶11 & Ex. H).
[45] Hague 1954 Convention on Civil Procedure, Articles 8-16 (Venable Decl. ¶12 & Ex. I); *see also Harfouche v. Wehbe,* 2:13-cv-00615-LDG-NJK (D.Nev. Mar. 14, 2014).
[46] *Id.*
[47] . *See, e.g., Harfouche*;  *U.S. v. Lebanese Canadian Bank,* 2012 WL 20035997 (S.D.N.Y. Jun. 6, 2012).

13

counsel for Inter123 to send the pleadings to counsel for Defendant by e-mail, or else authorize the Clerk of Court to send certified copies of the pleadings to Defendant at his Lebanon address or to his counsel via Federal Express.  Alternatively or additionally, Inter123 requests that this Court issue a Letter of Request/Letters Rogatory to effectuate service of process on Defendant Chadi Ghaith, with one original to be retained in the Court's files and another to be certified by the Clerk and delivered to counsel for Inter123 for translation and transmittal through suitable channels to the appropriate judicial authorities in the Republic of Lebanon.

DATED this 9th day of April, 2014.

By *s/ Lance C. Venable*
Lance C. Venable
Wendy K. Akbar
VENABLE, CAMPILLO, LOGAN & MEANEY, PC
1938 East Osborn Road
Phoenix, Arizona 85016

*Attorneys for Plaintiff*