**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Inter123 Corporation, | No. CV-14-00463-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Chadi Ghaith, | |
| Defendant. | |

Plaintiff Inter123 Corporation filed an amended complaint on April 8, 2014. Doc. 32.  Plaintiff then filed a renewed motion for alternative service (Doc. 33), a second application for a temporary restraining order ("TRO") and preliminary injunction (Doc. 36), and a supplement to its TRO application (Doc. 37).  Defendant Chadi Ghaith has not responded.  Plaintiff has not requested oral argument.  For the reasons that follow, the Court will grant the motion for alternative service and deny the motion for a TRO and preliminary injunction.

**I.     Background.**

Plaintiff commenced this action on March 7, 2014, alleging breach of contract against Defendant.  Plaintiff had anonymously negotiated to purchase the domain name "mobile.co" for $59,000 from Defendant through a third party website called Sedo.com. After Plaintiff tendered the sale price to Sedo.com, Plaintiff alleges that Defendant reneged on his obligations under the sale contract and transferred mobile.co from GoDaddy in Arizona, where it had been hosted, to Instra Corporation in Melbourne,

1   Australia.  Plaintiff sought a TRO, which the Court granted.  After two preliminary

2   injunction hearings, the Court vacated the TRO and denied the motion for a preliminary

3   injunction after determining that Defendant did not have sufficient contacts with Arizona

4   to support personal jurisdiction.  Doc. 30.  Plaintiff subsequently filed an amended

5   complaint (Doc. 32), adding claims for trademark infringement, unfair competition, and

6   conversion.  Plaintiff now requests a TRO and preliminary injunction based on its

7   amended complaint.

8   **II.      Application for TRO and Preliminary Injunction.**

9           In order to obtain a preliminary injunction, Plaintiff must establish that it is likely

10  to succeed on the merits, that it is likely to suffer irreparable harm in the absence of

11  preliminary relief, that the balance of equities tips in its favor, and that an injunction is in

12  the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The

13  Ninth Circuit continues to analyze the four elements using a "sliding scale" approach, in

14  which "the elements of the preliminary injunction test are balanced, so that a stronger

15  showing of one element may offset a weaker showing of another."  *Alliance for the Wild*

16  *Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).  Should the moving party

17  demonstrate a very high likelihood of injury, the likelihood of success on the merits may

18  be relaxed.  An injunction may be granted when serious questions going to the merits are

19  raised and the balance of hardships tips sharply in the plaintiff's favor.  *Wild Rockies*, 632

20  F.3d at 1135.

21          As to the breach of contract and specific performance claims, the Court concludes

22  that the analysis in its previous order still applies (Doc. 30) because Plaintiff has not

23  alleged any new facts that would support an exercise of personal jurisdiction.  The Court

24  will analyze each of Plaintiff's newly asserted claims.

25  **A.      Trademark Infringement.**

26          "A successful trademark infringement claim under the Lanham Act requires a

27  showing that the claimant holds a protectable mark, and that the alleged infringer's

28  imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'"

1    *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 630 (9th Cir. 2005) (quoting *KP*

2    *Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 125 S. Ct. 542, 547 (2004)).

3    Likelihood of confusion exists where reasonably prudent consumers in the marketplace

4    are "likely to be confused as to the origin of the good or service bearing one of the

5    marks."   *Surfvivor*, 406 F.3d at 630 (internal citation and quotation marks omitted).

6    Courts look to the following eight *Sleekcraft* factors when analyzing the likelihood of

7    confusion:  (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the

8    marks; (4); evidence of actual confusion; (5) marketing channels; (6) degree of consumer

9    care; (7) the defendant's intent; and (8) likelihood of expansion.  *Id.* at 631 (citing *AMF,*

10   *Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).   "The test is a fluid one

11   and the plaintiff need not satisfy every factor, provided that strong showings are made

12   with respect to some of them."  *Id.*

13                    **1.      Strength of the Mark.**

14         There are several categories of trademarks:  arbitrary (common words with no

15   connection to the product), fanciful (coined phrases with no known connection to the

16   product), suggestive (does not describe the features of a product but suggests them),

17   descriptive (defines a particular characteristic of a product in a way that does not require

18   any exercise of the imagination), and generic (describes the product in its entirety).

19   *Surfvivor*, 406 F.3d at 631-32.   Arbitrary and fanciful marks are given the greatest

20   protection while descriptive and generic marks are given the least.  *Id.*

21         The marks at issue here are several marks owned by Plaintiff – mobile.pro,

22   movil.pro, movil.co, and mobile.com.co – and the mobile.co domain name Defendant

23   was to sell to Plaintiff and that Defendant is now accused of converting.  The website

24   now associated with mobile.co appears to offer a comparison of mobile phones for sale.

25   Mobile.pro and its accompanying Spanish websites appear to be a collection of articles

26   and other content related to mobile electronic devices.  Mobile.com.co appears to direct

27   users to Plaintiff's other websites.

28         In considering Plaintiff's likelihood of success on the merits, the Court concludes

that it is likely to find that all the marks are descriptive because they describe a characteristic of the "products" in a way that does not require an exercise of the imagination. Because descriptive marks are given less protection than others, this factor is not likely to favor Plaintiff.

### 2.       Relatedness of the goods.

"The standard for deciding whether the parties' goods or services are related is whether customers are likely to associate the two product lines." *Id.* at 633 (internal citation omitted). Plaintiff repeatedly asserts that the services currently appearing on the mobile.co website are highly similar to the services appearing on mobile.pro and movil.co, but at no point does Plaintiff actually identify the products or services offered on mobile.pro or movil.co. Plaintiff alleges that mobile.pro is a "new online community for mobile communications professionals," but does not allege that mobile.co offers such a community. Both movil.co and movil.pro appear to be Spanish-language versions of mobile.pro, offering a collection of articles and other content related to mobile devices. Plaintiff does not allege that mobile.co offers any articles or content related to mobile devices, other than comparisons of deals, and does not allege that mobile.co is directed to Spanish-speaking consumers. Mobile.com.co purports to offer "mobile global online staffing solutions" and "domain registrar services," but Plaintiff does not allege that mobile.co offers such solutions and services. As discussed above, mobile.co appears to offer comparisons of mobile phone deals. It is unclear, then, how the products and services offered on the various websites are related. This factor does not appear likely to favor Plaintiff.

### 3.       Similarity of the Marks.

Courts consider the marks within the context of other identifying features and ask whether the marks are similar in sight, sound, and meaning. *Id.* The various domain names are similar in sight and sound, given that each mark contains either "mobile" or "movil." This factor appears likely to favor Plaintiff.

/ / /

### 4.     Evidence of Actual Confusion.

Plaintiff presents no evidence of actual confusion.  This factor is not likely to favor Plaintiff.

### 5.     Marketing Channels.

In analyzing this factor, courts look to whether the parties distribute their goods in the same marketing channels.  *Id.*  Although the services offered by Plaintiff's sites and mobile.co are marketed on the Internet, this is likely too broad a category to satisfy the requirement of similar marketing channels.  This factor is not likely to favor Plaintiff.

### 6.     Degree of Consumer Care.

"In analyzing the degree of care that a consumer might exercise in purchasing the parties' goods, the question is whether a 'reasonably prudent consumer' would take the time to distinguish between the two product lines."  *Id.* at 634 (citing *Brookfield Comm., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1060 (9th Cir. 1999)).  As discussed above, Plaintiff has not shown that the goods and services offered on the various websites are similar, and therefore it is not possible to determine what degree of care consumers would use in distinguishing between Plaintiff's product and the mobile phone deals offered on mobile.co.  Plaintiff has not shown that this factor is likely to favor its position at trial.

### 7.     Defendant's Intent.

Plaintiff has pleaded facts indicating that Defendant has gone to great lengths to avoid transferring the domain name to Plaintiff, and has attempted to get more money for the domain name.  Plaintiff also suggests that Defendant has already sold or licensed the domain name to a third party, which is now using the name to display the mobile phone deal comparisons.  Plaintiff has provided evidence of Defendant's intent to breach his contractual obligation to sell the domain name, but this is not necessarily evidence of intent to infringe Plaintiff's trademarks.

Plaintiff alleges that Defendant has leased or sold mobile.co to two different third parties: first, to an entity called Mobiles4everyone Ltd (Doc. 32, ¶ 75), and then to a

personal friend named Lawrence Darwish (Doc. 37 at 2).  Although Plaintiff alleges that Defendant and Darwish are close friends and that Defendant fraudulently transferred the domain name to Darwish in an attempt to avoid his contractual obligations, it does not allege that the content on mobile.co changed with the purported transfer of ownership from Defendant to Darwish.  Mobile.co still displays content from mobiles4everyone Ltd, the first entity to which Defendant is alleged to have sold or leased the domain name.  Plaintiff has not alleged that Defendant or his alleged cohort, Mr. Darwish, are responsible for the content displayed on mobile.co.  Rather, it alleges that Defendant's improper transfer of the domain name "resulted in trademark infringement." *Id.* at 3.  Plaintiff has not demonstrated that any entity other than mobiles4everyone Ltd is responsible for the content displayed on mobile.co and has not alleged any connection between that entity and Defendant or Darwish.  Plaintiff has not shown that this factor is likely to favor its position at trial.

### 8.  Likelihood of Expansion.

Under this factor, courts look to whether the existence of the allegedly infringing mark is hindering a plaintiff's expansion plans.  *Surfvivor*, 406 F.3d at 634.  Plaintiff has indicated that it intends to expand its "mobile" brand and that the mobile.co domain name is very important to that expansion, particularly in South America and other Spanish-speaking countries.  This factor is likely to favor Plaintiff.

On balance, the Court concludes that the majority of the *Sleekcraft* factors likely do not favor Plaintiff.  Although a plaintiff need not satisfy every factor, it must make a strong showing as to at least a few of the factors.  Here, the marks are similar in sound and Plaintiff intends to expand its "mobile" brand, but Plaintiff has not described the products and services offered on its websites or specifically how the products and services offered through Defendant's website are similar.  Moreover, it has alleged that Defendant has leased the domain to a third-party, which is likely responsible for the content appearing on the mobile.co website.  The Court cannot say that Plaintiff is likely to succeed on the merits of its trademark infringement claim against Defendant simply

1    because both websites contain the word "mobile" and Plaintiff intends to expand its

2    business.  The websites each have a unique design and appear to offer different services.

3    Plaintiff has not shown that it is likely to prevail on a trademark infringement claim.

4            **B.     Unfair Competition.**

5            In order to maintain an action for unfair competition under Arizona law, Plaintiff

6    must either show that it was engaged in competitive business with Defendant, *Lininger v.*

7    *Desert Lodge*, 160 P.2d 761, 764 (Ariz. 1945), or that Defendant's actions were likely to

8    produce public confusion, *Taylor v. Quebedeaux*, 617 P.2d 23, 24 (Ariz. 1980).  Parties

9    must solicit the same trade or the same customers in order to be engaged in competitive

10   business.  *Lininger*, 160 P.2d at 764.  Plaintiff has not shown that it is engaged in the

11   same business as Defendant.  Plaintiff alleges that Defendant is leasing or has sold

12   mobile.co to a company that offers "services that pertain to the use and sale of mobile

13   technologies," but Plaintiff has not specifically identified the goods and services provided

14   by mobile.pro and its Spanish-language counterparts other than to say it is an online

15   community for mobile communications professionals.  Moreover, Defendant is arguably

16   in the business of selling or leasing domain names, not the business of providing

17   comparisons of mobile phone deals.  Plaintiff has alleged that a third-party –

18   Mobiles4everyone Ltd. – is responsible for the content displayed on mobile.co.  Although

19   Plaintiff alleges that Defendant subsequently transferred mobile.co to a personal friend,

20   Lawrence Darwish, it has not alleged that either Defendant or Mr. Darwish has any

21   connection to Mobiles4everyone Ltd. or is responsible for the content displayed on

22   mobile.co.  Thus, Plaintiff has not shown that it is likely to succeed in proving that

23   Defendant is engaged in a competitive business.

24           Plaintiff has also not alleged any public confusion.  Plaintiff simply alleges that

25   Defendant's use of the word "mobile" is identical to its website and that mobile.co offers

26   highly similar goods and services.  As noted above, however, Plaintiff's websites offer an

27   online community for mobile communications professionals and mobile.co offers

28   comparisons of mobile phone deals.  Without more, Plaintiff's allegations are insufficient

1    to show a likelihood of success on the public confusion requirement.

2          **C.    Conversion.**

3          Under Arizona law, conversion is defined as "[a]n intentional exercise of

4    dominion or control over a chattel which so seriously interferes with the right of another

5    to control it that the actor may justly be required to pay the other the full value of the

6    chattel." *Focal Point, Inc. v. U-Haul Co. of Ariz.*, 746 P.2d 488, 489 (Ariz. Ct. App.

7    1986) (internal citation omitted).  Plaintiff has provided no authority for the proposition

8    that breach of a sales contract gives rise to a claim for conversion and has therefore failed

9    to demonstrate a likelihood of success on the merits.

10         **D.    Conclusion.**

11         Plaintiff has failed to demonstrate a likelihood of success on the merits of its new

12   claims.  For the reasons discussed above, the Court also concludes that Plaintiff has failed

13   to show the existence of serious questions on its new claims.  The Court therefore will

14   deny Plaintiff's request for a TRO and motion for a preliminary injunction.

15   **III.    Motion for Alternative Service.**

16         Plaintiff requests that the Court permit it to serve Defendant by alternative means

17   pursuant to Federal Rule of Civil Procedure 4(f)(3).  Doc. 33 at 7.  Defendant, a resident

18   and citizen of Lebanon, has not responded to Plaintiff's motion.  Plaintiff argues that

19   Defendant's "egregious" conduct in response to its complaint coupled with the difficulty

20   and expense of effectuating personal service in Lebanon necessitates alternative service.

21   Plaintiff requests that it be permitted to serve Defendant either by allowing the Clerk of

22   Court to send the pleadings to Defendant's counsel via Federal Express or allowing

23   Plaintiff to send the pleadings to Defendant's counsel via email.

24         Service under Rule 4(f)(3) must be (1) directed by the court and (2) not prohibited

25   by international agreement.  Fed. R. Civ. P. 4(f)(3).  "No other limitations are evident

26   from the text [of Rule 4(f)(3)].  In fact, as long as court-directed and not prohibited by an

27   international agreement, service of process under Rule 4(f)(3) may be accomplished in

28   contravention of the laws of the foreign country."  *Rio Properties, Inc. v. Rio Int'l*

1  *Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).  Service of process under Rule 4(f)(3) is

2  neither a "last resort" nor "extraordinary relief," but "is merely one means among several

3  which enables service of process on an international defendant." *Id*.

4         To pass constitutional muster, a method of service must be "reasonably calculated,

5  under all the circumstances, to apprise interested parties to the pendency of the action and

6  afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank*

7  *& Trust Co.*, 339 U.S. 306, 314 (1950).  Applying this construction of Rule 4(f)(3) and

8  the standard articulated in *Mullane*, courts have authorized a wide variety of alternative

9  methods of service.  *See SEC v. Tome*, 833 F.2d 1086, 1094 (2d Cir. 1987) (service of

10  process by publication in the *Int'l Herald Tribune*); *Int'l Controls Corp. v. Vesco*, 593

11  F.2d 166, 176-78 (2d Cir. 1979) (service by mail to last known address); *New Eng.*

12  *Merchs. Nat'l Bank v. Iran Power Generation & Transmission Co.*, 495 F. Supp. 73, 80

13  (S.D.N.Y. 1980) (service by telex for Iranian defendants); *Levin v. Ruby Trading Corp.*,

14  248 F. Supp. 537, 541-44 (S.D.N.Y. 1965) (service by ordinary mail); *Forum Fin. Group,*

15  *LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23-24 (D. Me. 2001)

16  (service on defendant's attorney); *In re Int'l Telemedia Assoc.*, 245 B.R. 713, 719-20

17  (Bankr. N.D. Ga. 2000) (service by email).

18         Plaintiff has taken several steps to apprise Defendant of this action including

19  providing all relevant documents to Defendant and his attorney via email.  Doc. 33 at 11.

20  Defendant is clearly aware of this action as shown by his retention of counsel and filing a

21  motion to vacate the Court's initial TRO.  Moreover, as Plaintiff notes, Defendant has

22  communicated with agents of the Plaintiff via Facebook about this litigation, and has

23  taken actions to avoid the Court's authority.  Given these facts, the Court concludes that

24  Plaintiff has made the requisite showing under Rule 4(f)(3) and *Mullane* to justify

25  alternative service.  Allowing Plaintiff to serve Defendant via email would clearly apprise

26  Defendant of the pendency of this action and afford him the opportunity to present his

27  objections.  *See Mullane*, 339 U.S. at 314.  Plaintiff's motion for alternative service is

28  therefore granted.    Plaintiff may complete service by sending the pleadings to

- 9 -

Defendant's counsel via email.

    **IT IS ORDERED:**

    1.    Plaintiff's motion for a temporary restraining order and preliminary injunction (Doc. 36) is **denied**.

    2.    Plaintiff's motion for alternative service (Doc. 33) is **granted**.

    Dated this 5th day of May, 2014.

_____
David G. Campbell
United States District Judge