David D. Lin (*Admitted Pro Hac Vice*)
LEWIS & LIN, LLC
45 Main Street, Suite 608
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: David@iLawco.com

*Attorneys for Defendant Chadi Ghaith*

Michelle C. Morris (*Pro Hac Vice Application Forthcoming*)
LAUNCH IP – THE LAW OFFICE OF MICHELLE C. MORRIS
18 Saint Marks Place, Suite 2
Brooklyn, NY 11217
Tel: (718) 412-0868
Fax: (718) 412-0868
Email: LaunchIP@gmail.com

*Attorneys for Defendant Lawrence Darwish*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **INTER123 CORPORATION,** a Nevada Corporation, <br><br> Plaintiff, <br><br> vs. <br><br> **CHADI GHAITH,** an individual and foreign resident of LEBANON, and **LAWRENCE DARWISH**, an individual and foreign resident of AUSTRALIA <br><br> Defendants | Case No.:  2:14-cv-463 PHX DGC |

**DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12 AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

i

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ................................................................................................. iii

**PRELIMINARY STATEMENT** ...................................................................................... 1

**BACKGROUND** ................................................................................................................ 2

**ARGUMENT** ...................................................................................................................... 4

**I.     The Court Should Dismiss the Second Amended Complaint as Plaintiff Fails to Allege Facts to Support an Exercise of Personal Jurisdiction Over the Non-resident Defendants.** ...................................................................................................................... 4

    A.  Legal Standard ................................................................................................... 4

    B.  Plaintiff Has Not Met Its Burden Under the Legal Standard as to Mr. Ghaith. .......... 6

    C.  Plaintiff Has Not Met Its Burden Under the Legal Standard as to Mr. Darwish. ..... 13

**II.    The Court Should Dismiss Plaintiff's Third, Fourth, Fifth and Sixth Counts as Plaintiff Fails to State a Claim for Trademark Infringement, Unfair Competition, Conversion and Fraudulent Conveyance** ................................................................................ 16

    A.  Legal Standard ................................................................................................. 16

    B.  Plaintiff's Amended Complaint Fails to Meet the Legal Standard ........................ 17

**III.   The Court Should Dismiss Plaintiff's Second, Seventh and Eighth Counts for Lack of Subject Matter Jurisdiction as Moot** ................................................................... 28

    A.  Legal Standard ................................................................................................. 28

    B.  Plaintiff Fails to Meet the Governing Legal Standard ...................................... 28

**IV.    The Court Should Dismiss Plaintiff's Remaining Counts, if any, for Failure to Join an Indispensible Party.** ................................................................................................ 29

    A.  Legal Standard ................................................................................................. 29

    B.  Plaintiff Fails to Meet the Governing Legal Standard ...................................... 31

**CONCLUSION** ................................................................................................................. 33

# TABLE OF AUTHORITIES

**CASES**

*Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976) ........................................18, 20

*America Online, Inc. v. Huang*, 106 F.Supp.2d 848, 850 (E.D. Va. 2000) ........................................................7, 8

*AMF Inc. v. Sleekcraft Boats*, 599 F. 2d 341, 348–49) (9th Cir. 1979)..........................................19, 21, 23

*Arizona v. California*, 460 U.S. 605, 618-19 (1983) ................................................................................6, 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) ..................................................................................16, 17

*Aspect Sys., Inc. v. Lam Research Corp.*, 06-1620-PHX-NVW, 2006 WL 2683642 (D. Ariz. Sept. 16, 2006)..23, 24

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ....................................7, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ..................................................................................16

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) ....................................................................2

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)......................................................................2

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)............................................................................5

*Business Buyer Directory LLC v. Northwest Capital Appreciation, Inc.*, No. CV-08-1606-PHX-DGC, 2009 WL 1698917 at *1 (D. Ariz. June 16, 2009) ..................................................................................................7

*Calder v. Jones*, 465 U.S. 783 (1984)....................................................................................................4, 14, 15

*Carstens v. City of Phoenix*, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (Ct.App.2003)..................................23

*Clark v. Rossow*, 134 Ariz. 490, 491, 657 P.2d 903, 904 (App. 1982) ............................................................25

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997).........................................................5, 6, 7

*Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)....................................................................14

Fed. R. Civ. P. 9(b) ..........................................................................................................................................25

*Fink v. Cont'l Foundry & Mach. Co.*, 240 F.2d 369, 375 (7th Cir. 1957) ........................................................29

*Fiore v. Walden*, 688 F.3d 558,  573 (9th Cir. 2012) ....................................................................................4, 5

*Focal Point, Inc. v. U–Haul Co. of Ariz.*, 746 P.2d 488, 489 (Ariz.Ct.App.1986) ..........................................23

*Friends of Amador Cnty. v. Salazar*, 11-17996, --- Fed.Appx. ----, 2014 WL 308560 at *1 (9th Cir. Jan. 29, 2014) ..................................................................................................................................................29, 30

*Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990).............................................5, 7

*Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004)................................10, 22

*Hullett v. Cousin*, 204 Ariz. 292, 295 (2003) .....................................................................................24, 25, 26

*In re Combined Metals Reduction Co. v. Gemmill*, 557 F.2d 179, 185–87 (9th Cir.1977)................................29

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ................................................................................5

*Inter123 Corp. v. Ghaith*, No. CV-14-00065-PHX-DGC, 2014 WL 1763280 at *4 (D. Ariz. May 5, 2014) .....18, 22, 23, 24

*Jahner v. Jacob*, 515 N.W.2d 183, 185 (N.D. 1994)........................................................................................26

*Laidley v. Heigho*, 362 F.2d 592 (9th Cir. 1963)............................................................................................26

*Lininger v. Desert Lodge*, 160 P.2d 761, 764 (Ariz. 1945) ..............................................................................18

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010) ................................................10, 22

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ..............................................................................28

*Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401 (5th Cir. 2009)......................................................14, 15, 31

*Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) ..............................................................18

*National Center for Employment of Disabled v. Ross*, No. CV 05-2014-PHX-JAT, 2006 WL 778647 (D. Ariz., March 27, 2006)..............................................................................................................................25, 26, 27

*Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998) ........................................................................................17

*Remington-Rand v. Emory Univ.*, 185 Ga. 571, 196 S.E. 58, 59 (1938) ..........................................................26

*Revolution Distribution v. Evol Nutrition Associates*, Inc., CV 11-2120-PHX-JAT, 2012 WL 2368634 at *10 (D. Ariz. June 21, 2012) .............................................................................................................30
*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002) .................................4
*Rocke v. Canadian Auto Sport Club*, 660 F.2d 395, 398 (9th Cir. 1981) .................................................4
*Savin Corp. v. Savin Group*, 391 F. 3d 439, 456 (2d Cir. 2004) ...........................................................18
*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ....................................... passim
*Seven Words LLC v. Network Solutions*, 260 F.3d 1089 (9th Cir. 2001) ................................................29
*Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990) .....................................................................4, 15
*State of Rio De Janeiro v. E. H. Rollins & Sons*, 299 N.Y. 363, 366-67, 87 N.E.2d 299, 300 (1949) .................26
*Surfvivor Media, Inc. v. Survivor Productions*, 406 F. 3d 625 (9th Cir. 2005) ....................18, 19, 21
*Taylor v. Quebedeaux*, 617 P.2d 23, 24 (Ariz. 1980) ...........................................................................18
*Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981) ....................................18
*White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ............................................................................28
*Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp.2d 1065, 1072 (C.D. Cal. 2004) .....................................14
*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F. 3d 1199, 1206 (9th Cir. 2006) (*en banc*) .............................5

**STATUTES**

15 U.S.C. § 1051(b) ..............................................................................................................................19
15 U.S.C. § 1114 ..................................................................................................................................18
15 U.S.C. § 1125 ..................................................................................................................................18
A.R.S. § 44-1001, et seq. ......................................................................................................................25
A.R.S. § 44-1001(2) ..............................................................................................................................25
A.R.S. § 44-1001(4) ..............................................................................................................................25
A.R.S. § 44-1004 ..................................................................................................................................28
A.R.S. § 44-1004 (A)(1) ...................................................................................................................24, 25
A.R.S. § 44-1004 (A)(2) ...........................................................................................................24, 25, 26
A.R.S. § 44-1005 ..................................................................................................................................24

**OTHER AUTHORITIES**

Internet Corporation for Assigned Names and Numbers ("ICANN") Rules for Uniform Domain Name Dispute Resolution Policy regarding mutual jurisdiction .......................................................................8

**RULES**

Fed. R. Civ. P. 12(b)(1) ........................................................................................................................28
Fed. R. Civ. P. 12(b)(2) .....................................................................................................................4, 16
Fed. R. Civ. P. 12(b)(6) .....................................................................................................................1, 16
Fed. R. Civ. P. 12(b)(7) ........................................................................................................................29
Fed. R. Civ. P. 19 ........................................................................................................................29, 30, 31
Fed. R. Civ. P. 8(a)(2) ...........................................................................................................................16
Rule 4.2 of the Arizona Rules of Civil Procedure ...................................................................................4

Defendants Chadi Ghaith ("Mr. Ghaith") and Lawrence Darwish ("Mr. Darwish," collectively with Mr. Ghaith, "Defendants"), by and through their undersigned counsel, hereby jointly move this Court to (i) dismiss Plaintiff Inter123 Corporation's ("Inter123") Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over Defendants, individually; (ii) dismiss Counts 3, 4, 5, and 6 pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that they fail to state a claim upon which relief may be granted; (iii) dismiss Counts 2, 7 and 8 as against Mr. Ghaith for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(h)(3); and (iv) dismiss any and all remaining claims as against Mr. Ghaith pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for failure to join an indispensable party.

## PRELIMINARY STATEMENT

This action is a foreign contract case over a domain name, dressed up by plaintiff as spurious trademark claims and duplicative quasi-contract claims to circumvent the legal rights of the true owner of the domain name and the jurisdictional limitations of federal court. This Court has already decided that it lacks personal jurisdiction over Mr. Ghaith as to Inter123's breach of contract and specific performance claims. This Court has already determined that Inter123 has failed to allege facts to support a likelihood of confusion as to its newly pled Lanham Act claims. The rest of Inter123's claims are moot and unredressable, either by this Court or without the addition of an indispensable party, to wit: the current owner of the domain name.  As such, the only thing left to do is to dismiss this action.

First, as a threshold matter, neither Mr. Ghaith nor Mr. Darwish are residents of the State of Arizona or the United States, and Inter123's Second Amended Complaint is rife with conclusory statements regarding Defendants' alleged contacts with Arizona.  Thus, Inter123

has failed to allege any facts that would support an exercise of personal jurisdiction over the out-of-state defendants.  As such, the Court should dismiss the Second Amended Complaint in its entirety.

Second, Inter123 fails to allege plausibility of a likelihood of confusion between its alleged marks and Mr. Ghaith's alleged conduct and fails to assert facts to raise its purported entitlement to relief above the speculative level.  As such, Counts 3, 4 and 5 of the Second Amended Complaint fail to sufficiently state a cause of action and must be dismissed.

Third, as the subject domain name no longer belongs to Mr. Ghaith, but rather Mr. Darwish, a resident of Australia, Inter123's injunctive claims are no longer redressable as against Mr. Ghaith.  Considering this defect, federal jurisdiction is lacking, and therefore, Mr. Ghaith requests this Court dismiss this action in its entirety.  This Motion is supported by this Memorandum of Points and Authorities, exhibits annexed hereto, and all other papers previously filed herein.

## BACKGROUND[1]

On March 7, 2014, Inter123 filed a complaint asserting one cause of action, breach of contract, relating to the purported sale of the domain name, <mobile.co> (the "Domain Name"), between it and Mr. Ghaith (the "Complaint"). *See* (Doc. 1).  Mr. Ghaith is a resident of Lebanon. *See* (Doc. 1).  Inter123 sought and was granted a TRO. (Doc. 15).  Mr. Ghaith moved to vacate the TRO for, *inter alia*, the Complaint failed alleged facts sufficient to support an exercise of personal jurisdiction over Mr. Ghaith in Arizona. (Doc. 20).  This

---

[1] The facts set forth herein are based on the Complaint, documents attached to the complaint as an exhibit, matters of which judicial notice may be taken, and documents either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

2

Court granted Mr. Ghaith's motion and denied the preliminary injunction after determining that "it does not have personal jurisdiction over Defendant [Ghaith]". (Doc. 30).

On April 8, 2014, Inter123 filed an Amended Complaint (Doc. 32) adding six new claims for specific performance, trademark infringement, unfair competition, conversion, injunctive relief and declaratory relief (the "Amended Complaint").  Inter123 again sought a TRO and preliminary injunction. (Doc 33).  Inter123 supplemented its application for a TRO and preliminary injunction with new factual information, to wit: that as of April 9, 2014, Lawrence Darwish of Melbourne, Australia became the registrant and owner of the Domain Name. (Doc 37).

By Order dated May 5, 2014 (Doc. 39) (the "May 5th Order"), this Court, *inter alia*, denied the TRO and preliminary injunction, in relevant part as follows:

> As to the breach of contract and specific performance claims, the Court concludes that the analysis in its previous order still applies (Doc. 30) because <u>Plaintiff has not alleged any new facts that would support an exercise of personal jurisdiction</u>.

In the May 5th Order, this Court further denied the TRO and preliminary injunction as to the new claims after determining that Inter123 had not alleged facts to support a likelihood of confusion as to its trademark claims, had failed alleged facts to show competitive businesses or public confusion as to its unfair competition claims, nor provided authority that a "breach of sales contract gives rights to a claim for conversion."

On May 29, 2014, Inter123 filed a second amended complaint (Doc. 43) adding a new claim for fraudulent conveyance under A.R.S. 44-1004 and including the allegation, which formerly appeared in its supplement to its TRO application, that the Domain Name had been transferred to Australian resident Lawrence Darwish ("Second Amended Complaint").

## ARGUMENT

**I.     The Court Should Dismiss the Second Amended Complaint as Plaintiff Fails to Allege Facts to Support an Exercise of Personal Jurisdiction Over the Non-resident Defendants.**

**A.     Legal Standard**

Federal courts are courts of limited jurisdiction. Rule 12(b)(2) of the Federal Rules of Civil Procedure permits challenges to personal jurisdiction through the filing of a motion to dismiss.  When a defendant has raised a jurisdictional challenge, plaintiff bears the burden of producing sufficient facts to establish that the exercise of personal jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004).  A plaintiff must demonstrate jurisdiction over each defendant individually. *See Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990); *see also Calder v. Jones*, 465 U.S. 783 (1984).  District courts may exercise personal jurisdiction over foreign individuals to the extent permitted by the long arm statute of the forum state. *See Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).

In Arizona, the applicable statute is Rule 4.2 of the Arizona Rules of Civil Procedure, which provides that courts in Arizona shall exercise jurisdiction "to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."  Thus, in federal district court in Arizona, an assertion of personal jurisdiction must comport with the Due Process Clause of the United States Constitution. *See Fiore v. Walden*, 688 F.3d 558, 573 (9th Cir. 2012); *Rocke v. Canadian Auto Sport Club*, 660 F.2d 395, 398 (9th Cir. 1981).  "Due process allows a court to exercise personal jurisdiction over a defendant only if 'the defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there.'" *Id.* at 562 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)) (emphasis omitted).

Thus, a plaintiff must demonstrate that each non-resident defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fred Martin Motor Co.*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). For general jurisdiction, a plaintiff must establish that the non-resident defendant engaged in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state. *Id.* at 801 (internal citation omitted). For specific jurisdiction in contract or trademark cases, such as this one, a plaintiff must establish that "(1) [t]he defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable." *Gray & Co. v. Firstenberg Mach. Co., Inc.*, 913 F.2d 758, 760 (9th Cir. 1990); *see Fiore*, 688 F. 3d at 564; *see Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 416 (9th Cir. 1997); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F. 3d 1199, 1206 (9th Cir. 2006) (*en banc*); *Fred Martin Motor Co.*, 374 F. 3d at 802.

Moreover, "a contract alone does not automatically establish the requisite minimum contacts necessary for the exercise of personal jurisdiction." *Gray & Co.*, 913 F.2d at 760 (citing *Burger King*, 471 U.S. at 478). Plaintiff must make a prima facie showing of facts, above and beyond the existence of a contract, that establish personal jurisdiction by preponderance of the evidence. *Id.* Further, a passive website that allegedly uses the

5

trademark of a plaintiff "does not qualify as purposeful activity invoking the benefits and protections of Arizona." *Cybersell*, 130 F.3d at 420.

Finally, the "law of the case" doctrine posits "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618-19 (1983).

**B.    Plaintiff Has Not Met Its Burden Under the Legal Standard as to Mr. Ghaith.**

        i.    Plaintiff cannot allege any facts to support general jurisdiction in Arizona.

Inter123 fails to allege, and cannot allege, any facts to support that Defendant Ghaith has engaged in "continuous and systematic general business contacts" in Arizona. There are no allegations of any systematic contacts with the state of Arizona.  Simply put, the Second Amended Complaint is wholly deficient of any facts that would support an exercise of general jurisdiction over Mr. Ghaith as an individual.

        ii.    Plaintiff cannot allege facts to support specific jurisdiction in Arizona.

Inter123's conclusory allegations regarding Defendant Ghaith's actions also fail to demonstrate that the non-resident defendant possessed the requisite "minimum contacts" with Arizona to support an exercise of specific jurisdiction.  Again, Mr. Ghaith is an individual and a resident of the country of Lebanon.  However, all of Inter123's allegations of Mr. Ghaith's purported contacts with Arizona are based on the false premises that (1) the Domain Name was "hosted on GoDaddy's servers in Scottsdale, Arizona," (2) Mr. Ghaith negotiated a sale agreement with Inter123 in Arizona and (3) the website on the Domain Name targeted Arizona residents. *See* Second Amended Complaint at ¶¶ 14, 30-48. This is insufficient.

        a.    *No purposeful availment*

In the Ninth Circuit, "purposeful availment" requires plaintiff to show that "the defendant engage[d] in some form of affirmative conduct allowing or promoting the

transaction of business within the forum state." *Business Buyer Directory LLC v. Northwest Capital Appreciation, Inc.*, No. CV-08-1606-PHX-DGC, 2009 WL 1698917 at *1 (D. Ariz. June 16, 2009) (quoting *Gray & Co.*, 913 F.2d at 760); *see Fred Martin Motor Co.*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there.").   The purposeful availment test dictates a "qualitative evaluation" of the foreign defendant's conduct and connection with the forum state "such that he should reasonably anticipate being haled into court there." *Id.*   In the Ninth Circuit, the purposeful availment test is not satisfied unless there is factual support that the defendant committed an act "targeted at a plaintiff whom the defendant *knows to be a resident* of the forum state." *Cf. Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)(emphasis added). A passive website, without something more, is not enough to qualify as purposeful activity. *See Cybersell*, 130 F. 3d at 418 ("While there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that Cybersell FL deliberately directed its merchandising efforts toward Arizona residents.").

Here, Inter123 has failed to allege, and cannot prove, that Mr. Ghaith committed any act that would have availed himself of the laws of the State of Arizona.  First, to the extent that Inter123 claims that Mr. Ghaith's Domain Name was "hosted" or "resided" in Arizona by virtue of its former registration with GoDaddy, that argument is technically inaccurate and is belied by case law. *See America Online, Inc. v. Huang*, 106 F.Supp.2d 848, 850 (E.D. Va. 2000) (holding domain name registration agreement with registrar and conduct in forum state by registrar in performance thereof were "so modest in scope and nature that it is difficult to

view it as 'transacting business' in the registrar's state of residence").  Further, a domain name does not "reside" at any one location. *See id.*; *see also* Internet Corporation for Assigned Names and Numbers ("ICANN") Rules for Uniform Domain Name Dispute Resolution Policy regarding mutual jurisdiction, available at <http://www.icann.org/en/help/dndr/udrp/rules> (last accessed on June 4, 2014).

Second, as "the jurisdictional analysis must focus on the circumstances of the contract negotiations, the contract's execution, and the relationship the contract has to the forum state," (*Am. Online, Inc. v. Huang*, 106 F. Supp. 2d at 856), Plaintiff's allegations in the Second Amended Complaint are threadbare as to Mr. Ghaith's conduct in Arizona with respect to negotiating the purported sale agreement.  According to the Second Amended Complaint, the parties purported to negotiate online via Sedo.com LLC's website, <sedo.com>. Second Amended Complaint at ¶ 30.  Exhibit F to the Second Amended Complaint does not contain any identifying information about either of the parties. *See* Second Amended Complaint at Ex. F.  As such, Plaintiff cannot show that the negotiating parties were even aware of who the other person was before the contract was purportedly concluded.  In short, the negotiations were "double blind;" neither party knew who the other party was before concluding the negotiations.

Again, according to the Second Amended Complaint, the *first* instance where the identity of the negotiating parties appeared was in the purported written transfer agreement. Second Amended Complaint at ¶ 33.  There, Inter123, identified as the "Buyer" therein, listed its address as 3224 McLeod Dr., Suite 100, Las Vegas, NV 89121. *See* Second Amended Complaint at Ex. H.  No part of the "Purchase and Sale Agreement" identified the parties as residing in Arizona, nor required the performance of any party to take place in

Arizona, nor dictated that payment should be processed or remitted in Arizona.  As a result, throughout the purported negotiations, Mr. Ghaith could not have known that Inter123 was a resident of Arizona (much less who they were), and at the conclusion of said negotiations, Inter123 revealed it was in Nevada, *not* Arizona.   Even Plaintiff's own website at <www.inter123.com> provides that the company is in Nevada, *not* Arizona. The "Contact Us" page at Plaintiff's website lists its mailing address as 3224 McLeod Dr., Suite 100, Las Vegas, NV 89121—the same address that appeared after the double blind negotiations. Available at <http://www.inter123.com/contact-us/> (last accessed on June 4, 2014). Moreover, Plaintiff states that its principal, not Mr. Ghaith, initiated contact with respect to the Domain Name. First Application for TRO at ¶ 2; Second Amended Complaint at Ex. F (showing first offer made by Inter123).  Plaintiff's allegations that Mr. Ghaith was aware of any nexus with Arizona are simply fabricated and not supported by the documentary evidence attached to the Second Amended Complaint, evidence that this Court may take judicial notice of, or Plaintiff's own admissions.

Plaintiff alleged no new facts between its Complaint, the Amended Complaint and the Second Amended Complaint as to Mr. Ghaith's contacts with Arizona as to Counts 1, 2, 5, 7 and 8 (breach of contract and injunctive claims).  As such, the Court should apply the "law of the case" doctrine, as it already found that it lacked personal jurisdiction over Mr. Ghaith and dismiss the action.

Finally, Plaintiff's newfound allegations related Counts 3, 4 and 6 (trademark, unfair competition, and fraudulent conveyance) wholly fail to show that the out-of-state defendant expressly aimed any activity to customers or persons in Arizona.  Plaintiff alleges that the website located at the Domain Name offered goods and services similar to those under its

Mobile.Pro and Movil.Co domains.   (Doc. 43 at ¶¶ 114-16, 120). However, this Court already found that:

> Plaintiff has not demonstrated that any entity other than mobiles4everyone Ltd is responsible for the content displayed on mobile.co and has not alleged any connection between that entity and Defendant [Ghaith] or Darwish.

(Doc. 39 at 6).  Moreover, a review of the mobile.co site shows that the site itself is directed to consumers in England, not in Arizona.  The "About us" page of the moible.co website states, in relevant part:

> In 2001 we created the *UK's* first mobile phone price comparison web site.
> Every day our site trawls millions of deals, collecting prices and information from all of the *UK's* leading mobile phone retailers.

(Emphasis added). Available at <http://www.mobile.co/about.asp> (last accessed on June 4, 2014).  Trademark rights are national, not international. *See Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010) ("The central issue before us is whether American claims for relief can be asserted on the basis of conduct that only occurred in Great Britain. . . The Lanham Act cannot be applied extraterritorially to encompass acts committed in Great Britain."); *cf. Grupo Gigante SA De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1093 (9th Cir. 2004) ("The territoriality principle, as stated in a treatise, says that "[p]riority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world.").  Thus, none of the goods, services or information offered on the mobile.co website, during the time that Inter123 alleges the website infringed upon their trademark, actually offered services expressly aimed at the United States, much less the State of Arizona.  Plaintiff's allegations that such conduct, by a third party, was targeted at Plaintiff in Arizona, fail.

Finally, none of Inter123's allegations with respect to the subsequent transfer of the Domain Name to Lawrence Darwish purport to have occurred in Arizona. According to Inter123, the Domain Name was registered with Instra Corp. in *Australia*, the current owner, Darwish, is a resident of Melbourne, *Australia*, and the former owner, Mr. Ghaith, is a resident of *Lebanon*. Similarly, Inter123's allegation that Mr. Ghaith and Darwish conspired to harm Inter123 in Arizona (see Doc. 43 at ¶ 94), begs the question. As stated below, Inter123 has not alleged that is has an enforceable obligation against Mr. Ghaith that would subject either party to jurisdiction. Inter123 posits no facts that would even lead to the circumstantial inference that Mr. Darwish knew about Inter123's whereabouts, residence or existence. Simply put, Mr. Ghaith did nothing from Lebanon to purposely avail himself of the laws of Arizona with respect of this action.

  b. *Claims alleged do not arise out of Defendant's forum-related activities*

Because Mr. Ghaith has no contacts with Arizona, Inter123 wrongfully alleges that its claims arise out of Mr. Ghaith's alleged forum-related activities. As the purported "Purchase and Sale Agreement" neither required the performance of any act in Arizona nor identified the parties thereto as residing in Arizona, Inter123's thinly veiled attempt to impute liability upon Mr. Ghaith because it now claims it is located in Arizona and the alleged breach affected it there must fail. Furthermore, as Mr. Ghaith resides in Lebanon and the purported negotiations occurred over the Internet, the alleged agreement was more likely to have taken place in in Lebanon, Massachusetts (where Sedo.com LLC has an office), or Germany (where the parent company of Sedo is located) than in Arizona.

Similarly, with respect to Inter123's fraudulent conveyance claim, none of Mr. Ghaith's alleged acts arose out of activities related to the forum state. The Domain,

registered with an Australian registry, was purportedly transferred from a Lebanon resident to an Australian resident.  Inter123 would like the Court to hold that, since the initiation of this action, every action and breath that Mr. Ghaith took abroad – although he had not been formally served process until June 4, 2014 – somehow became a forum-related activity by virtue Inter123's claimed Arizona residence. This is untenable.

Plaintiff posits absolutely no facts that support a finding that Mr. Ghaith has ever conducted business or personal activities in Arizona.  Accordingly, no contacts with Arizona exist as to Mr. Ghaith such that would give rise to any of Inter123's claims.

c.    *Exercise of jurisdiction unreasonable*

As mentioned above, Mr. Ghaith has no connection with the State of Arizona.  Moreover, as Inter123 did not allege and cannot prove the first two prongs of the "purposeful availment" test, any exercise of jurisdiction over Mr. Ghaith would be unreasonable and not comport with due process. *See Fred Martin Motor Co.*, 374 F. 3d at 802.  Furthermore, because Mr. Ghaith is a resident of Lebanon, requiring him to come defend a suit and engage in discovery in Arizona would impose a great burden.  Arguably, as much if not more of the alleged actions taken by Mr. Ghaith occurred in and out of Lebanon, not Arizona.  This Court has already twice determined that it lacks personal jurisdiction over Mr. Ghaith as to Inter123's contract and specific performance claims. (Docs. 30 and 39). As Inter123 has again failed to allege, and cannot allege, facts to support either general or specific jurisdiction over Mr. Ghaith in Arizona, this Court should again decline to exercise personal jurisdiction over him.

**C.      Plaintiff Has Not Met Its Burden Under the Legal Standard as to Mr. Darwish.**

      i.      <u>Plaintiff cannot allege any facts to support general jurisdiction in Arizona.</u>

Inter123's attempts to paint Mr. Darwish with the same brush as Mr. Ghaith fail – Inter123 cannot simply disregard its obligation to assert jurisdictional facts, individually. Notably, Inter123's sole jurisdictional statement only references Mr. Ghaith and *not* Mr. Darwish. *See* Second Amended Complaint at ¶ 7.   This pleading failure alone warrants dismissal.

Further, Inter123 fails to allege, and cannot allege, any facts to support that Defendant Darwish has engaged in "continuous and systematic general business contacts" in Arizona. There are no allegations of any systematic contacts with the state of Arizona.  Simply put, the Second Amended Complaint is wholly deficient of any facts that would support an exercise of general jurisdiction over Mr. Darwish as an individual.

      ii.      <u>Plaintiff cannot allege facts to support specific jurisdiction in Arizona.</u>

Inter123's conclusory allegations regarding Mr. Darwish's actions fail to demonstrate that the non-resident defendant possessed the requisite "minimum contacts" with Arizona to support an exercise of specific jurisdiction.   Again, Plaintiff alleges that Mr. Darwish is an individual and a resident of the country of Australia.   However, the only allegation of Mr. Darwish's purported contact with Arizona is based on the conclusion that Mr. Darwish was a "personal friend" of Mr. Ghaith. *See* Second Amended Complaint at ¶ 90. This is insufficient.

      *a.      No purposeful availment*

As stated above, the purposeful availment test requires factual support that the defendant committed an act "targeted at a plaintiff whom the defendant *knows to be a resident* of the forum state." *See Bancroft & Masters*, 223 F.3d at 1087. Inter123's Second

Amended Complaint fails to provide support for its conclusory proposition that Mr. Darwish, individually, knew that it resided in Arizona. None of Inter123's allegations with respect to the subsequent transfer of the Domain Name to Lawrence Darwish purport to have occurred in Arizona.  As mentioned, the Domain Name was registered with Instra Corp. in *Australia*, the current owner, Mr. Darwish, is a resident of Melbourne, *Australia*, and the former owner, Mr. Ghaith, is a resident of *Lebanon*.  Inter123 would like the Court to believe that "mere association" with Mr. Ghaith, however slight, should be imputed to Mr. Darwish is inapposite to a jurisdictional analysis on each defendant individually. *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp.2d 1065, 1072 (C.D. Cal. 2004) (citing *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989)).  Moreover, Inter123 posits no facts that would even lead to the circumstantial inference that Mr. Darwish knew about Inter123's whereabouts, residence or existence, or did anything from Australia to purposely avail himself of the laws of Arizona with respect to this action. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401 (5th Cir. 2009) ("Under *Calder* . . . the plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction. We are thus doubtful that personal jurisdiction exists over the recipient of a fraudulent transfer anywhere a complaining creditor files suit simply by virtue of the creditor's residence in that forum.").

Again, Inter123 has repeatedly identified its address as 3224 McLeod Dr., Suite 100, Las Vegas, NV 89121. *See* Second Amended Complaint at Ex. H. Even Plaintiff's own website at <www.inter123.com> provides that the company is in Nevada, *not* Arizona.  The only evidence in the record of Plaintiff's residence in Arizona is its self-serving allegation in the Complaint, which is belied by its own statements that it is in Nevada, public filings that it is in Nevada and alleged conduct with respect to its negotiations with Mr. Ghaith above.

14

Plaintiff's allegations that Mr. Darwish was aware of any nexus with Arizona are totally dependent on Mr. Ghaith's knowledge (or lack thereof) above, are fabricated from whole cloth and lack support in the documentary evidence attached to the Second Amended Complaint, evidence that this Court may take judicial notice of, or Plaintiff's own admissions.  This is improper, as Plaintiff is required to assert jurisdictional facts as to each Defendant individually. *See Sher*, 911 F.2d at 1365; *Calder*, 465 U.S. at 783; *see also TestAmerica, Inc*., 564 F.3d at 401.  Just because Plaintiff alleges that Mr. Ghaith should have known that it is in Arizona, does not mean that Mr. Darwish is likewise subject to suit in Arizona.  There is no evidence to support Plaintiff's conclusory assertion to the contrary.

> b.    *Claims alleged do not arise out of Defendant's forum-related activities*

Because Mr. Darwish has no contacts with Arizona, Inter123 wrongfully alleges that its claims arise out of Mr. Darwish's alleged forum-related activities. Similarly, with respect to Inter123's fraudulent conveyance claim, none of Mr. Darwish's alleged acts arose out of activities related to the forum state.  The Domain, registered with an Australian registry, was purportedly transferred from a Lebanon resident to an Australian resident.  Again, Inter123 would like the Court to impute Mr. Ghaith's actions in Lebanon and Mr. Ghaith's alleged knowledge on Mr. Darwish, to transform his foreign receipt of the Domain Name into a forum-related activity solely by virtue Inter123's claimed Arizona residence. This is untenable.

Plaintiff posits absolutely no facts that support a finding that Mr. Darwish has ever conducted business or personal activities in Arizona.  Accordingly, no contacts with Arizona exist as to Mr. Darwish such that would give rise to any of Inter123's claims.

> c.    *Exercise of jurisdiction unreasonable*

15

As mentioned above, Mr. Darwish has no connection with the State of Arizona. Moreover, as Inter123 did not allege and cannot prove the first two prongs of the "purposeful availment" test, any exercise of jurisdiction over Mr. Darwish would be unreasonable and not comport with due process. *See Fred Martin Motor Co.*, 374 F. 3d at 802. Furthermore, because Mr. Darwish is a resident of Australia, requiring him to come defend a suit and engage in discovery in Arizona would impose a great burden. Arguably, as much if not more of the alleged "actions" taken by Mr. Darwish occurred in and out of Australia, not Arizona. As Inter123 has failed to allege, and cannot allege, facts to support either general or specific jurisdiction over either of the non-resident, foreign Defendants in Arizona, this Court should again decline to exercise personal jurisdiction over them. Thus, this action must be dismissed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## II. The Court Should Dismiss Plaintiff's Third, Fourth, Fifth and Sixth Counts as Plaintiff Fails to State a Claim for Trademark Infringement, Unfair Competition, Conversion and Fraudulent Conveyance.

### A. Legal Standard

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Although this rule "does not require 'detailed factual allegations,'" *id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see also id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

16

its face." *Iqbal*, 556 U.S. at 678. *Iqbal* and *Twombly* highlight two principles: (1) a court is not bound to accept as true legal conclusions couched as factual allegations and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

As stated above, the "law of the case" doctrine posits "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618-19 (1983).

**B.    Plaintiff's Amended Complaint Fails to Meet the Legal Standard**

Plaintiff's claim cannot succeed on the merits because, even under the facts as pled, Plaintiff has not stated a cause of action and cannot, as a matter of law, overcome its failure to allege plausibility of a likelihood of confusion.  Moreover, Plaintiff cannot show that Mr. Ghaith's former ownership and use of the Domain Name was likely to cause confusion, mistake, or deception with the alleged trademarks.  Next, Plaintiff has failed to allege any facts or legal authority to support its claim of conversion. Finally, Plaintiff's fraudulent conveyance claim fails for lack of a "right to payment."

i.    <u>The Third and Fourth Counts relating to trademark infringement and unfair competition must be dismissed</u>

As a threshold matter, Plaintiff has failed to adequately plead the elements of trademark infringement and unfair competition. In order to state a trademark infringement claim or an unfair competition claim, a plaintiff must posit factual allegations that it owns a protectable mark.  If a term is commonly descriptive or generic for a genus or class of thing it simply may not take on trademark status regardless of the amount of a party's advertising, promotion and use of the term. As explained in *Abercrombie & Fitch Co. v. Hunting World,*

*Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976), "This means that even proof of secondary meaning, by virtue of which some 'merely descriptive' marks may be registered, cannot transform a generic term into a subject for trademark. … [N]o matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name." 537 F.2d at 9. Plaintiff must also allege that the allegedly improper conduct will result in a "likelihood of confusion." *See* 15 U.S.C. §§ 1114 and 1125; *see Surfvivor Media, Inc. v. Survivor Productions*, 406 F. 3d 625 (9th Cir. 2005); *see also Savin Corp. v. Savin Group*, 391 F. 3d 439, 456 (2d Cir. 2004) ("[T]he crucial issue in an action for trademark infringement . . . is whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.").

When evaluating this element on a motion to dismiss, "[i]f the court determines as a matter of law from the pleadings that the goods are unrelated and confusion is unlikely, the complaint should be dismissed." *Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996) (citing *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790–91 (9th Cir. 1981)).

To maintain a cause of action for unfair competition under Arizona Law, a plaintiff must "show that it was engaged in a competitive business with Defendant, *Lininger v. Desert Lodge*, 160 P.2d 761, 764 (Ariz. 1945), or that Defendant's actions were likely to produce public confusion, *Taylor v. Quebedeaux*, 617 P.2d 23, 24 (Ariz. 1980)." *Inter123 Corp. v. Ghaith*, No. CV-14-00065-PHX-DGC, 2014 WL 1763280 at *4 (D. Ariz. May 5, 2014).

Thus, the likelihood of consumer confusion is a common element of both infringement and unfair competition claims.

In reviewing likelihood of confusion, courts consider the following eight factors, "referred to as the *Sleekcraft* factors: (1) strength of the mark(s); (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) the defendants' intent; (8) likelihood of expansion." *Surfvivor Media, Inc.*, 406 F.3d at 631 (citing *AMF Inc. v. Sleekcraft Boats,* 599 F. 2d 341, 348–49) (9th Cir. 1979) ("*Sleekcraft* ").

First, Plaintiff does not allege facts to support its claim that its marks are protectable. Inter123 does not have federal trademark *registrations* for mobile.pro, movil.pro and movil.co and has failed to allege any secondary meaning attached to those marks relative to Plaintiff.  Inter123's Second Amended Complaint makes reference in Paragraph 11 to and attaches several trademark applications[2] for the marks MOBILE.PRO, MOVIL.PRO, MOVIL.CO and MOBILE.CO[3] it filed with the United States Patent and Trademark Office ("USPTO"). (Doc. 43 at ¶ 11). These applications and associated correspondence are also available via the USPTO website, accessible at www.uspto.gov.  However, a review of the USPTO's filing system indicates that Plaintiff has no registered trademark rights in any of the referenced marks.  Instead, Plaintiff only has three applications pending before the USPTO, and six *refusals* by the USPTO to issue a registration based on the fact that the mark is *"merely descriptive."*  By Office Actions dated January 20, 2014, the USPTO issued <u>final</u> refusals to register all of Inter123's applied-for marks because they "merely describe[] a

---

[2] Notably, on each of the USPTO applications, Inter123 is described as a Nevada corporation and listed its address as 3225 McLeod Dr., Suite 100, Las Vegas, NEVADA 89121.
[3] It should also be noted that Plaintiff's application to register the MOBILE.CO mark (serial number 86236426) is based on section 1(b)—or "intent to use."  *See* 15 U.S.C. § 1051(b).  In other words, Plaintiff has admitted to

characteristic of applicant's goods and/or services."   A copy of the Office Action for application No. 85933234 is annexed hereto as **Exhibit A**.[4]

Thus, just as this Court found that Plaintiff's marks are descriptive, for the same reasons, the USPTO refused to even register the marks which form the basis of Inter123's newly-pled claims against Mr. Ghaith.  This Court should not permit Plaintiff to perpetrate that it has enforceable trademark rights, which ultimately have been denied by the USPTO. Moreover, the Second Amended Complaint is devoid of any allegations of extensive use and association between the generic and descriptive term "mobile" and Plaintiff such that would give rise to secondary meaning in the minds of consumers. *See Abercrombie & Fitch Co.*, 537 F.2d at 9.  The combination of unregistered, descriptive marks without any allegations of secondary meaning are fatal to Plaintiff's claim that it has a protectable mark.  Since Plaintiff has failed to allege that it has a protectable mark, its trademark claims must fail as a matter of law.

Next, the meager allegations against Defendants, as set forth in Paragraphs 79-84 of the Second Amended Complaint, are inadequate under federal pleading standards to give rise to actual consumer confusion or even the likelihood of confusion (as is required for infringement and unfair competition claims).  In denying Plaintiff's application for a TRO, this Court already determined that Plaintiff failed to demonstrate a likelihood of success of such claims.  Defendants agree with the Court's well-reasoned analysis there and suggests that it applies here in the context of dismissal. Furthermore, a comparison of Plaintiff's

---

the USPTO that it has not actually used "MOBILE.CO" in commerce, and it is therefore not entitled to trademark rights.
[4] The Office Action is related to the application Plaintiff refers to extensively throughout the complaint and is, in and of itself, a publically available government record, thus this Court may take judicial notice of it.

allegations with the several of the *Sleekcraft* factors shows that it has failed to allege even the plausibility of a likelihood of confusion.

(1) Strength of Marks

Plaintiff's unregistered marks, mobile.pro, movil.co and movil.pro, are descriptive of Plaintiff's goods (an "online community for mobile communication professionals") and thus, entitled to no protection under the Lanham Act absent a showing of secondary meaning (which Plaintiff has not pled). *Surfvivor Media, Inc.*, 406 F.3d at 631.  Contrary to Plaintiff's allegation (*see* Doc. 43 at ¶ 77), it has no ownership interest in the Domain Name (i.e. the subject matter of this dispute) or in the phrase "mobile.co."  This factor thus goes against a finding of a likelihood of confusion.

(2) Relatedness of the goods

Consumers are unlikely to associate the products and services offered by Plaintiff with those that were available on the website at the Domain Name, mobile.co.   While Plaintiff fails to identify what services and information were being offered through the Domain Name, as stated above, the website provided mobile phone contract comparison for consumers in the UK.  Plaintiff does not allege that it offers similar services through its marks. This factor thus goes against a finding of a likelihood of confusion.

(4) Evidence of actual confusion

The Second Amended Complaint is totally devoid of any allegation of actual confusion. This factor thus goes against a finding of a likelihood of confusion and is a fatal defect to Plaintiff's unfair competition claims.

(5) Similarity of marketing channels

While the services offered by Plaintiff through its marks and the alleged usage through the Domain Name occurred on the Internet, the services offered via the Domain Name/mobile.co were directed to consumers in the UK. *See Love*, 611 F.3d at 608 (affirming dismissal of Lanham Act claims "on the basis of conduct that only occurred in Great Britain" and holding that "[t]he Lanham Act cannot be applied extraterritorially to encompass acts committed in Great Britain."). Plaintiff makes no allegation that its services were offered or directed to the UK. Even if Plaintiff has shown such use in the UK, it would be outside the jurisdictional purview of the Lanham Act. *See Grupo Gigante SA De CV*, 391 F.3d at 1093 ("The territoriality principle, as stated in a treatise, says that "[p]riority of trademark rights in the United States depends solely upon priority of use in the United States, not on priority of use anywhere in the world."). Furthermore, as this Court determined, the Internet itself "is likely too broad a category to satisfy the requirement of similar marketing channels." *Inter123 Corp. v. Ghaith*, 2014 WL 1763280 at *4. This factor thus goes against a finding of a likelihood of confusion.

(6) Degree of customer care

Arguably, the "mobile communication professionals" that Plaintiff targets through its unregistered marks would be savvy enough to distinguish between a website that offered articles directed towards that community and mobile phone comparison website for consumers in the UK. Nonetheless, Plaintiff's failure to plead facts demonstrating a similarity of services between the claimed infringement and its own make it impossible to evaluate customer care. *See Inter123 Corp. v. Ghaith*, 2014 WL 1763280 at *4. This factor thus goes against a finding of a likelihood of confusion.

(7) Defendant Ghaith's intent

Again, Inter123 fails to plead any factual allegation of intent by Mr. Ghaith to infringe upon its unregistered marks. Thus, this factor thus goes against a finding of a likelihood of confusion.

As such, not only do six of the eight *Sleekcraft* factors go against a finding of a likelihood of confusion, but also Plaintiff is unable to remedy such defects upon further amendment or through discovery. As Plaintiff has failed to show that it has protectable trademarks, that any conduct attributed to Mr. Ghaith occurred in or was directed to consumers in the United States (much less Arizona), or that any of the facts, as alleged, could ever result in a likelihood of confusion as a matter of law, Counts 3 and 4 must be dismissed.

    ii.    The Fifth Count relating to conversion must be dismissed

Plaintiff's Fifth Count for conversion must be dismissed as a barely reworked, duplicative and impermissible attempt to recover on its First Count for breach of contract, as the claim (1) fails as a matter of law because Inter123s did not have a right to control the Domain Name and (2) is barred by the economic loss rule.  There is no basis for this claim under Arizona law and it must be dismissed. Conversion is "[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Id.* at *5 (citing *Focal Point, Inc. v. U–Haul Co. of Ariz.,* 746 P.2d 488, 489 (Ariz.Ct.App.1986)). "Under the economic loss rule, a contracting party may not recover economic damages in tort unless there is an accompanying physical harm, either in the form of personal injury or secondary property damage." *Aspect Sys., Inc. v. Lam Research Corp.*, 06-1620-PHX-NVW, 2006 WL 2683642 (D. Ariz. Sept. 16, 2006) (citing *Carstens v. City of Phoenix*, 206 Ariz. 123, 125, 75 P.3d 1081, 1083 (Ct.App.2003) (internal citations omitted)).

As stated above, this entire action is premised on an alleged, foreign contract for exchange of the Domain Name. Inter123's own allegations belie any argument that it had "a right to possess and own the MOBILE.CO domain name as its property" separate and apart from the purport sales contract it claims existed between it and Mr. Ghaith. *See* (Doc. 43 at ¶¶ 100, 123-126). Inter123 never had title to the disputed Domain Name as it claims that Mr. Ghaith never completed his performance of "all necessary steps." *See* (Doc. 43 at ¶ 103). "Title only passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods." *Aspect Sys.*, 2006 WL 2683642 at *4. As such, Plaintiff's conversion claims fails as a matter of law. *See Inter123 Corp. v. Ghaith*, 2014 WL 1763280 at *4 (nothing that breach of a sales contract does not give rise to a claim for conversion).

The economic loss rule bars claims between contracting parties for, *inter alia*, loss of benefit of the bargain. *See Aspect Sys.*, 2006 WL 2683642 at *4. In the Second Amended Complaint, Inter123 claims that it did not receive the Domain Name it contracted for. However, the Fifth Count for conversion is an improper attempt by Plaintiff to label a refusal to perform a contract as also constituting a tort. Plaintiff alleges no additional injury other than economic damages associated with the purported breach of contract. As such, its claim is also barred by the economic loss rule and must be dismissed.

iii.    The Sixth Count relating the UFTA must be dismissed

Arizona's Uniform Fraudulent Transfer Act ("UFTA") divides potentially remediable transfers of debtor's property into two categories: "actually fraudulent transfers, A.R.S. section 44-1004 (A)(1), and constructively fraudulent transfers, A.R.S. sections 44-1004 (A)(2) and 44-1005." *Hullett v. Cousin*, 204 Ariz. 292, 295 (2003). Actually fraudulent

transfers require an allegation and showing of intent to delay, hinder and/or defraud the creditor, while constructively fraudulent transfers require a showing of debtor's insolvency at the time or as a result of the transfer. *Id.* Both categories require the existence of a "debt," defined by UFTA as "liability on a claim." A.R.S. § 44-1001(4). A "claim" is defined as "a right to payment." A.R.S. § 44-1001(2).

"[T]he UFTA is remedial; it does not create new claims." *Hullett*, 204 Ariz. at 297 (citing *Clark v. Rossow*, 134 Ariz. 490, 491, 657 P.2d 903, 904 (App. 1982) ("The fraudulent conveyance act, A.R.S. § 44-1001, et seq., does not create a new claim. If a claim does not exist there is no remedy."). Thus to set aside a transfer as fraudulent, there must be a valid claim, or enforceable obligation. *See Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) (defining "right to payment" as "an enforceable obligation"). A claim or judgment that is constitutionally infirm, i.e. whether barred by statue, is void, voidable or lacking jurisdiction, is unenforceable. *See, e.g., National Center for Employment of Disabled v. Ross*, No. CV 05-2014-PHX-JAT, 2006 WL 778647 (D. Ariz., March 27, 2006); *Hullett*, 204 Ariz. at 297-98. Without an enforceable obligation, the UFTA does no provide the plaintiff with a remedy. *Id.*

In addition, Plaintiff's allegation of fraudulent conveyance is merely conclusory, and does not satisfy the requirements in Fed. R. Civ. P. 9(b) that the pleading specify the details constituting the wrong. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

As a threshold matter, Plaintiff's laundry list pleading of Count 6 fails to allege all the substantive elements under A.R.S. § 44-1004(A)(1) or (2), making it unclear under which category it is proceeding. Nonetheless, under either category, Plaintiff's entire UFTA claim must be dismissed for failure to allege a "right of payment." Arizona's UFTA is remedial

and does not serve to create a new claim or right of payment.  Where, as here, there is no enforceable claim, the UFTA does not provide the Plaintiff with a remedy.  *See Ross*, 2006 WL 778647; *Hullett*, 204 Ariz. at 297-98.  Without an enforceable obligation, the UFTA does no provide the plaintiff with a remedy.  *Id.*  Moreover, Plaintiff's Second Amended Complaint is devoid of any allegation of insolvency, warranting dismissal of any claim under A.R.S. § 44-1004 (A)(2) for constructively fraudulent transfer.

Only a "creditor," i.e. one who has a valid claim and right to payment, may attack a conveyance as fraudulent.  *Ross,* 2006 WL 778647 at *8.  A claim, even if it were meritorious, may be unenforceable if time-barred by the statute of limitations. *See Hullett*, 204 Ariz. at 297; *see also Laidley v. Heigho*, 362 F.2d 592 (9th Cir. 1963); *Jahner v. Jacob*, 515 N.W.2d 183, 185 (N.D. 1994) ("[T]he claimant loses her status as a creditor if her claim against the transferor becomes barred by the statute of limitations, a non-claim statute, or other method."); *State of Rio De Janeiro v. E. H. Rollins & Sons*, 299 N.Y. 363, 366-67, 87 N.E.2d 299, 300 (1949) ("[T]he right to set aside such a transfer is based on the existence of a valid enforcible [sic] claim and, since plaintiff, because of the running of the six-year statute on its contract debt, had no enforcible [sic] claim thereon when this suit was brought, the suit, insofar as it challenged the fraudulent conveyance, was likewise barred"); *Remington-Rand v. Emory Univ.*, 185 Ga. 571, 196 S.E. 58, 59 (1938) ("[W]here the debt is barred, equity will not proceed to make the vain and empty gesture of setting conveyances aside. . .").  Similarly, failure to serve process, lack of subject matter jurisdiction or lack of personal jurisdiction may make a once valid claim, constitutionally infirm, null, and unenforceable. *See, e.g., Ross*, 2006 WL 778647 at *6-8.  For example, in *Ross,* the plaintiff sought to enforce a $10 million dollar default judgment obtained in Texas state court in

Arizona under the UFTA. *Ross*, 2006 WL 778647 at *6-8. The plaintiff alleged that the defendant, whose company controlled and held a multi-million dollar letter of credit that was the subject of the Texas state court action, transferred the asset to a trust held by his wife in violation of the UFTA. *Id.* The *Ross* defendant then sought summary judgment on plaintiff's UFTA claim "on the grounds that the Plaintiff's only asserted interest in the alleged transfer derives from a void judgment" because he was never served process in the Texas state court action. *Id.* In granting summary judgment in favor of the defendant "debtor," the United States District Court for the District of Arizona noted, "the Arizona Supreme Court has held to qualify as a 'right of payment' under the UFTA the claim asserted must be an enforceable obligation." *Id.* The Court held that because the Texas default judgment was obtained without due process (for lack of service of process), the judgment was "constitutionally infirm" and unenforceable in Arizona. *Id.* Thus, the *Ross* plaintiff's UFTA claim was denied as a matter of law. *Id.*

In the instant matter, Plaintiff's only asserted interest in the Domain transfer and sole "right to payment" is derivative of its alleged breach of contract claim, which is unenforceable for lack of personal jurisdiction over Mr. Ghaith. *See infra* Section I (B). Plaintiff cannot breathe life back into a dismissible and constitutionally infirm claim by alleging that the Defendants violated the UFTA by transferring foreign property following the filing of the Complaint. *See, e.g., Ross*, 2006 WL 778647 at *8. Plaintiff paints the picture that Mr. Ghaith has thumbed his nose at the Court by transferring his property. *See* (Doc. 43 at ¶ 89). However, Plaintiff is the one thumbing its nose at this Court's jurisdictional limits by asking it to get involved in a blind transaction it allegedly entered with foreign residents involving foreign property. At the time of the transfer, Mr. Ghaith was

under no obligation or court order restricting the disposition of his property.  To allow Plaintiff to use the UFTA as a means to gain jurisdiction over foreign defendants (who allegedly committed a foreign act), whom this Court already ruled that it lacked personal jurisdiction and without first serving formal process, would deprive Defendants of property in a manner that is contrary to the most basic tenets of due process.

Because Plaintiff's claim is unenforceable, and the UFTA only provides a remedy for enforceable claims, Plaintiff's Sixth Count under A.R.S. § 44-1004 must be dismissed as a matter of law, for failure to state a cause of action.

## III. The Court Should Dismiss Plaintiff's Second, Seventh and Eighth Counts for Lack of Subject Matter Jurisdiction as Moot.

### A. Legal Standard

As stated above, federal courts are courts of limited jurisdiction.  Standing and mootness are creatures of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). To establish Article III standing, a plaintiff must demonstrate that he has satisfied each of three "irreducible constitutional" elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   A plaintiff must show that: (1) he has suffered an "injury in fact"; (2) the injury is "fairly traceable" to the complained-of conduct;  and (3) it is "likely as opposed to merely speculative that the injury will be redressed by a favorable decision." *Id.* at 560–61, quotations and alterations omitted).  In the absence of a live, justiciable controversy, a court must dismiss the action. *See, e.g., White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

### B. Plaintiff Fails to Meet the Governing Legal Standard

While Inter123's remaining state-law "claims" are mere alternative requests for relief on its breach of contract claim, those causes of action for specific performance, injunctive relief and declaratory relief must be dismissed as against Mr. Ghaith because he no longer

owns the Domain Name.  In short, Plaintiff lacks standing as against Mr. Ghaith and its claims are effectively moot and no longer redressable.

Plaintiff alleges that as of April 9, 2014, Mr. Darwish became the registrant and owner of the Domain Name. (Doc. 43 at ¶ 89). Thus, since that date, Mr. Ghaith no longer has the authority or control over the Domain Name to effectuate any of Plaintiff's requests for injunctive relief and specific performance. *See Seven Words LLC v. Network Solutions*, 260 F.3d 1089 (9th Cir. 2001) (dismissing case as moot when domain names at issue were subsequently registered to third parties); *In re Combined Metals Reduction Co. v. Gemmill*, 557 F.2d 179, 185–87 (9th Cir.1977); *see also Fink v. Cont'l Foundry & Mach. Co.*, 240 F.2d 369, 375 (7th Cir. 1957) (concluding that a suit to enjoin sale of corporate assets was moot even though "it was by the act of [the defendant] that the assets were transferred out of the jurisdiction of the court and the liquidation accomplished," because the defendant "did only that which it had a right to do").  Nothing here prohibited Mr. Ghaith from disposing of the Domain Name at the time he transferred it to Mr. Darwish.  Plaintiff's injunctive claims are premised upon Mr. Ghaith's ownership of same.  Absent his ownership, Plaintiff has no declaratory or injunctive relief available to it.  Therefore, Counts 2, 7 and 8 of the Second Amended Complaint should be dismissed as against Mr. Ghaith.

**IV.**   **The Court Should Dismiss Plaintiff's Remaining Counts, if any, for Failure to Join an Indispensible Party.**

**A.**   **Legal Standard**

Fed. R. Civ. P. 12(b)(7) permits dismissal of actions for failure to join indispensible parties under Rule 19. The Ninth Circuit employs a three-step process in resolving issues of joinder under Rule 19. *See Friends of Amador Cnty. v. Salazar*, 11-17996, --- Fed.Appx. ----, 2014 WL 308560 at *1 (9th Cir. Jan. 29, 2014).  First, the court must decide whether the

absent party "is a 'required' party that should normally be joined pursuant to Rule 19(a)(1)."

*Id.* A party is "required" or "necessary" if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject matter of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave the parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

Next, if the absent party is required, the Court must determine whether they can be feasibly joined in the litigation. Fed. R. Civ. P. 19(b); *Salazar*, 2014 WL 308560 at *1. This second step invariably requires a determination of whether the Court can exercise personal jurisdiction over the required party. *See Revolution Distribution v. Evol Nutrition Associates, Inc.*, CV 11-2120-PHX-JAT, 2012 WL 2368634 at *10 (D. Ariz. June 21, 2012) (noting when the absent, property-owning party "cannot feasibly be joined" to an action "for lack of personal jurisdiction, courts have dismissed the claims to which the owner is indispensible under Rule 19"). Third and finally, if joinder is not feasible, the Court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *Salazar*, 2014 WL 308560 at *1. The factors for the court to consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

**B.      Plaintiff Fails to Meet the Governing Legal Standard**

No just and fair adjudication of the injunctive claims in this matter can be made in the absence of the individual who owns the property at issue, the Domain Name, to wit: Lawrence Darwish of Melbourne, Australia.  As such, Mr. Darwish is an indispensable party to Plaintiff's injunctive and fraudulent conveyance claims seeking turnover of the Domain Name. *See* Fed. R. Civ. P. 19(a).  While Plaintiff recently named Darwish as a defendant, upon the facts alleged, it is unlikely that the Court could exercise personal jurisdiction over him.  Thus, joinder is not feasible and dismissal is warranted for any and all remaining claims against Mr. Ghaith.

i.   Plaintiff cannot allege facts to support specific jurisdiction over Mr. Darwish in Arizona.

Even if Mr. Darwish is a named defendant, joinder will not be feasible as Inter123's conclusory allegations regarding Mr. Darwish's actions fail to demonstrate that the non-resident defendant possessed the requisite "minimum contacts" with Arizona to support an exercise of specific jurisdiction.  Again, Plaintiff alleges that Mr. Darwish is an individual and a resident of the country of Australia.  However, the only allegation of Mr. Darwish's purported contact with Arizona is based on the conclusion that Mr. Darwish was a "personal friend" of Mr. Ghaith. *See* Second Amended Complaint at ¶ 90. This is insufficient.

Inter123 posits no facts that would even lead to the circumstantial inference that Darwish knew about Inter123's whereabouts, residence or existence, or did anything from Australia to purposely avail himself of the laws of Arizona with respect of this action. *See TestAmerica, Inc.*, 564 F.3d at 401.

31

As of April 9, 2014, Mr. Ghaith no longer owns or controls the Domain Name.  There is no legally cognizable interest at stake between Inter123 and Mr. Ghaith as to the injunctive claims.  In the absence of the current owner of the Domain Name, Lawrence Darwish, this Court could not issue an effective order with respect to Plaintiff's injunctive or fraudulent conveyance claims. A refusal to grant dismissal when this Court arguably lacks personal jurisdiction over Mr. Darwish would have great prejudicial effect on him and his rights as owner of the Domain Name, and no real benefit to Plaintiff (who primarily seeks ownership of same). Moreover, should this action be dismissed, Plaintiff is not without recourse. It could file an action in Lebanon or Australia against either Mr. Ghaith or Mr. Darwish.  Thus, dismissal of any and all of Plaintiff's remaining claims is warranted.

1

## CONCLUSION

2      Based on the foregoing, Defendants respectfully request that the Court (i) dismiss the

3

Second Amended Complaint in its entirety for lack of personal jurisdiction over Mr. Ghaith

4

and Mr. Darwish; (ii) dismiss Counts 3, 4, 5 and 6 for failure to state a claim; (iii) dismiss

5

6    Counts 2, 7 and 8 as against Mr. Ghaith for lack of subject matter jurisdiction; (iv) dismiss

7    any and all remaining claims as against Mr. Ghaith for failure to join an indispensable party;

8    (v) award attorney's fees and costs to Defendants; and (5) such other and further relief as this

9

Court deems just and proper.

10

11   Dated: Brooklyn, New York
           June 24, 2014

12

13                                               LEWIS & LIN, LLC

14

15                              By: */s/ David D. Lin*
                                    David D. Lin
16                                  (*Admitted Pro Hac Vice*)
                                    45 Main Street, Suite 608
17                                  Brooklyn, NY 11201
                                    Tel: (718) 243-9323
18                                  Fax: (718) 243-9326
                                    Email: David@iLawco.com
19
                                    *Counsel for Defendant Chadi Ghaith*
20

21                                  LAUNCH IP – THE LAW OFFICE OF
                                    MICHELLE C. MORRIS
22

23                              By: */s/ Michelle C. Morris*
                                    Michelle C. Morris
24                                  (*Pro Hac Vice Application Forthcoming*)
                                    18 Saint Marks Place, Suite 2
25                                  Brooklyn, NY 11217
                                    Tel: (718) 412-0868
26                                  Fax: (718) 412-0868
                                    Email: LaunchIP@gmail.com
27
                                    *Counsel for Defendant Lawrence Darwish*
28